IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 30, 2001 Session

## LISA HEATH v. MEMPHIS RADIOLOGICAL PROFESSIONAL CORPORATION, ET AL.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 75928-9 T.D.     The Honorable Robert L. Childers, Judge**

---

**No. W2000-02770-COA-R3-CV - Filed November 6, 2001**

---

This is a medical malpractice case. Plaintiff sued physician, radiological group and hospital, alleging failure to discover and diagnose her malady resulting in permanent physical impairment. The trial court entered judgment for the defendants on a jury verdict, and plaintiff appealed asserting evidentiary errors and the failure of the trial judge to perform his duty as the thirteenth juror. We affirm

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Joel Porter and Nathan A. Bicks, Memphis; Todd A. Rose, Paris, For Appellant, Lisa Heath

Jerry E. Mitchell, John H. Dotson, and Andrea N. Malkin, Memphis, For Appellees, Dale E. Hansen, M.D. and Memphis Radiological Professional Corporation

### OPINION

Plaintiff, Lisa Heath, sued Memphis Radiological Professional Corporation, Dale E. Hansen, M.D., and Methodist Hospitals of Memphis[1] for medical malpractice by deviating and not conforming to the standard of care in failing to diagnose a brain tumor which directly and proximately caused severe injuries and disabilities to the plaintiff.

---

[1]Edward Mabry, M.D., was also originally sued, but the suit against him was voluntarily dismissed by the plaintiff. Defendants, Memphis Radiological Professional Corporation and Methodist Hospitals of Memphis, are sued for their responsibility for the actions of defendant, Dale E. Hansen, M.D., on the theory of *respondeat superior*. However, we will refer to them collectively with Dr. Hansen as defendants.

Defendants' answer denies the material allegations of negligence against them and joins issue thereon. The answer also avers that the defendants conformed to the established standard of care, and they used reasonable care and diligence in their medical practice and procedure and were guilty of no negligence or malpractice of any nature.

The case was tried before a jury and submitted to the jury on a special verdict form. The first question and answer of the verdict form resolved the case:

> We, the jury, unanimously answer the questions submitted by the Court as follows:
>
> 1. Do you find that the defendant, Dr. Dale E. Hansen, deviated from the recognized standard of acceptable professional practice with respect to the MRI studies on plaintiff, Lisa Heath? (The plaintiff has the burden of proof.)
>
> Yes_____   No _____X_____
>
> If your answer is "No," stop here, sign the Verdict Form and return to the Court. If you answered "Yes," proceed to Question 2.
>
>          *               *              *

The trial court entered judgment for the defendants on the jury verdict, and plaintiff subsequently filed a motion for a new trial which was denied by the trial court.

Plaintiff's appeal presents three issues for review:

> 1. Whether the trial court, as thirteenth juror, afforded too much deference to the jury's verdict and thereby applied an incorrect standard in its evaluation of the evidence?
>
> 2. Whether the trial court erred by excluding evidence of bias arising from the fact that defendant Dale Hansen, M.D. and the physicians who testified on his behalf had a financial interest in the outcome of the case through their ownership interest in State Volunteer Mutual Insurance Company?
>
> 3. Whether the trial court erred by allowing defendants to introduce any testimony by Fereidoon Parsioon, M.D. because of defendants' failure, during pretrial discovery, to disclose Dr. Parsioon as a person with knowledge or as an expert witness?

Since all of plaintiff's issues present questions of law, we will deal only briefly with the facts, except as necessary in considering the specific issues.

In early 1993, plaintiff began experiencing hearing loss in her left ear and was referred by her primary care physician to Dr. Allan Ruleman, an ear, nose, and throat physician. Dr. Ruleman conducted various tests and then referred plaintiff to the radiology department at Methodist North Hospital for an MRI study of her brain, which was performed on March 12, 1993. Memphis Radiological Professional Corporation had a contract with Methodist Hospitals of Memphis whereby the corporation agreed to provide radiological services to Methodist's patients. Defendant, Dale E. Hansen, M.D., was a member of the Memphis Radiological Professional Corporation and, being on duty on March 12, 1993, was responsible for interpreting plaintiff's MRI. Plaintiff's theory and contention is that the March 12, 1993 MRI revealed a brain tumor and that Dr. Hansen was negligent in failing to discover and diagnose that condition, because he did not conform to the standard of acceptable practice for radiologists in the community. As the evidence revealed, plaintiff's condition deteriorated over a period of approximately two years, during which time she had various examinations and treatment from a variety of physicians, including numerous MRI procedures.

The defendants' theory and proof is that, although in retrospect plaintiff's tumor might have been discernable on the March 12, 1993 MRI, Dr. Hansen was not negligent in failing to see it. Over the approximate two year period subsequent to the March 12, 1993 MRI, plaintiff had several other MRI procedures, all of which were reviewed by several different radiologists without finding that the affected area of the brain was abnormal, having an identifiable tumor. Defendants' proof is to the effect that it was only after obtaining a highly detailed image of plaintiff's brain and a personal view of the patient, could the radiologist determine that there was in fact a tumor.

We will now discuss plaintiff's first issue for review:

> 1. Whether the trial court, as thirteenth juror, afforded too much deference to the jury's verdict and thereby applied an incorrect standard in its evaluation of the evidence?

When the trial court is called upon to act as the thirteenth juror upon the filing of a motion for a new trial, the trial court must be independently satisfied with the verdict of the jury. *Cumberland Telephone and Telegraph Co. v. Smithwick*, 79 S.W. 803 (Tenn. 1904). The Supreme Court's opinion reads in part:

> The rule in civil cases is that, if the circuit judge is dissatisfied with the verdict of the jury, it is his duty to set it aside and grant a new trial, and that upon its being made to appear to this court, from statements made by the circuit judge in passing upon the motion for new trial, that he was really not satisfied with the verdict, it becomes the duty of this court, when it has acquired jurisdiction of the cause, to do what the circuit judge should have done; that is, to grant a new

trial on the ground of the dissatisfaction of that judicial officer with the verdict. [Citations omitted.]

\* \* \*

The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise – as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence, and, if he is dissatisfied with the verdict of the jury, he should set it aside. . . .

*Id.* at 804-05.

If the trial judge, when acting as the thirteenth juror, simply approves the verdict without any comment, it is presumed by an appellate court that he has performed his function adequately. *Miller v. Doe*, 873 S.W.2d 346 (Tenn. Ct. App. 1993). Where the trial court makes comments in the course of reviewing a motion for a new trial, we will review those comments, but we do not review those comments to see if we agree with the trial court's reasoning but rather to determine whether the trial court properly reviewed the evidence and was satisfied or dissatisfied with the verdict. *Id.* at 347. If the trial judge makes comments which indicate that he has misconceived his duty or clearly has not followed it, this Court must reverse and remand the case for a new trial. *Id.*

Following these principles, it now becomes our responsibility to examine the comments made by the trial judge when he overruled plaintiff's motion for a new trial. We quote from the transcript:

And . . . regarding the weight of the evidence in this case, this was a very well tried, very hard fought case. You know, I was certainly sympathetic and I don't know how the jury could help but be sympathetic to the plaintiff in this case. But it is a case, as Mr. Mitchell has suggested, that could have gone either way.

You know, as a trial judge I sit up here and listen to all the evidence and then instruct the jury and the jury comes back, and in almost every case, I would say 90 to 95 percent of the cases, I don't have any problems with what the jury does. In five percent or less of

the cases the jury comes back with a verdict and I think to myself how in the world did they come to that verdict based on the evidence that I heard in this case.

And in those cases if the party, the aggrieved party, comes back and asks for a new trial, generally I grant it. But this is not one of those cases. Again if the jury had come back for the plaintiff, I would have said there's evidence – ample evidence in the record. And I can't remember the plaintiff's expert's witness Doctor Bat –

MR. ROSE: Batnitsky.

THE COURT: Thank you. I couldn't remember his last name. Made a good credible witness, I thought, even though he was lambasted for testifying in other cases. Made a credible witness. And if the jury had come back for the plaintiff, I would have said the evidence preponderates in favor of the verdict of the jury. And likewise based on the verdict for the defendant, I have got to say after an independent review of the evidence that the evidence preponderates in favor of the verdict of the jury in this case and not against.

Again, it was a tough case and I'm certainly empathetic with the plaintiff, but you had your jury trial. I think it was a fair trial, and I will deny you motion.

Subsequently, on October 13, 2000, the trial court entered an "Order Denying Plaintiff's Motion for a New Trial," which states:

This cause came to be heard on plaintiff's motion for a new trial, memoranda, and statements of counsel, and the entire record in the case, from all of which it appears that the motion is not well taken and should be denied. As thirteenth juror, the Court agrees with the jury verdict and agrees that the preponderance of the evidence is in favor of the defendants.

WHEREFORE, IT IS CONSIDERED AND ORDERED BY THE COURT that plaintiff's motion for new trial be, and the same is hereby, denied.

Plaintiff asserts that "the trial court's candor, in its ruling as the thirteenth juror, shows an impermissible degree of deference to the jury's verdict." Plaintiff primarily relies upon the Supreme Court's holding in *Holden v. Rannick*, 682 S.W.2d 903 (Tenn. 1984).

In **Holden**, also a medical malpractice case, the Supreme Court commented:

> Although the trial judge said that he agreed with the verdict for the defendant, he indicated that he would also have agreed with the verdict for the plaintiff. That position is inconsistent with his duty to weigh the evidence and pass on the issues. If a trial judge properly weighs the evidence and passes on the issues, he will not find that the evidence does not preponderate in favor of the plaintiff because the verdict is for the defendant, but would preponderate in favor of the plaintiff if the verdict had been for the plaintiff.

> The trial judge stated that he expressly approved the verdict. It appears from the context of that statement, however, that he approved the verdict because he felt that the case was fairly presented and he was not shocked by the verdict, rather than because he reached the same verdict as the jury after independently weighing the evidence and passing upon the issues. Twice the trial judge stated that the court does not substitute its judgment for that of the jury. Those statements reveal a mistaken belief on his part that he was under no duty to pass upon the issues.

> Because the trial judge stopped short of making an independent decision on the issues presented by the case, and deferred to the judgment of the jury, he failed to perform his duty as a thirteenth juror.

*Id.* at 905-06.

In determining whether the trial court misconceived its duty as a thirteenth juror, the Supreme Court made it clear that the comments of the trial judge should be considered as a whole. *Id.*

In the case at bar, the trial judge recognized his duty to make an independent review of the evidence and stated that his experience has been that in 90 to 95 percent of the cases the jury comes back with the proper decision; that in the other percentage of the cases, he generally grants a new trial. He stated "but this is not one of those cases." Although the trial judge stated that if the jury had come back for the plaintiff, he would have said that the evidence preponderates in favor of the verdict of the jury, it appears that he did that in the context of his expressed sympathy for the plaintiff. He did specifically state that he considered the verdict for the defendant on an independent review of the evidence and found that the evidence preponderates in favor of the verdict. No where does the trial judge indicate that he is not at liberty to substitute his judgment for that of the jury, as in **Holden**. It appears that the judge's remarks concerning a jury verdict for the plaintiff is merely pointing out that there was material evidence to sustain a verdict for the plaintiff on that standard of review and not that the weight of the evidence was placed with plaintiff. Considering his remarks

as a whole, we find that the trial judge did not misconceive his duty as the thirteenth juror and made an independent review of the evidence from which he found that the evidence did not preponderate against the jury's verdict in favor of the defendant. Moreover, a court speaks through its written orders. **Ladd v. Honda Motor Co.**, 939 S.W.2d 83 (Tenn. Ct. App. 1996), and the trial court's order denying the motion for a new trial explicitly provides that the decision was made only after an independent review of the evidence. There is no reversible error by the trial court on this issue.

The second issue for review is:

> 2. Whether the trial court erred by excluding evidence of bias arising from the fact that defendant Dale Hansen, M.D. and the physicians who testified on his behalf had a financial interest in the outcome of the case through their ownership interest in State Volunteer Mutual Insurance Company?

Defendant filed a motion *in limine* stating in part:

> 1. That counsel for plaintiff and plaintiff's witnesses shall not adduce testimony or comments with respect to whether the defendants or any of the witnesses called by the defendants are insured by any liability insurance or by State Volunteer Mutual Insurance Company in particular.

> \*　　　　\*　　　　\*

The trial court granted the motion, and plaintiff was allowed to make an offer of proof as follows:

> Fereidoon Parsioon, M.D.
>
> Q. (BY MR. PORTER:) Dr. Parsioon, are you insured by the State Volunteer Mutual Insurance Company?
>
> A. Yes, sir.
>
> Q. What group are you a part of?
>
> A. I am a solo practitioner.
>
> Q. Solo practitioner?
>
> A. Yes, sir.

Q. When you were with the Semmes-Murphey Clinic, were they insured by the SVMIC, as well?

A. I believe so.

Q. And do you understand that the physicians who were insured are the people who own the company.

A. Yes, sir.

Q. A doctor owned insurance company; is that correct?

A. I believe so.

Q. Thanks. That's all.

James Wolfe, M.D.

Q. (BY MR. ROSE:) The other thing I want to ask you is, in your practice, are you insured by State Volunteer Mutual Insurance Company?

A. Yes, sir. Everybody in that group is.

Q. And you understand that you are an owner in part in that insurance company?

A. I saw one of the depositions that question was asked and after that, I gave it some thought. And I finally realized why they sent me the proxies every year. I think I must be.

Q. You have an ownership interest in the company, in the insurance company, you understand that?

A. I am not for certain of that, no, I'm not. But I have an idea I probably am. I am a shareholder of some sort.

Q. That's all. Thank you.

MR. MITCHELL: Dr. Wolfe, do you know whether or not Dr. Hansen has any insurance of any kind?

A. No, I don't.

MR. MITCHELL: That's all I have.

<u>Gale Gardner, M.D.</u>

Q. (BY MR. PORTER:) Dr. Gardner, are you insured by the SVMIC Insurance Company?

A. Yes, sir.

Q. Is that a physician owned company that operates within the State of Tennessee?

A. I believe that it is.

Q. And are you, by virtue of being a policyholder, also an owner of that company?

A. I don't know the answer to that.

Q. Are you aware of anyone else who owns it, other than the doctor members who are insured by it?

A. I don't know enough about it to be able to answer that question, Mr. Porter. I'm sorry.

Q. And do you know, of your own knowledge, whether the defendant, Dr. Hansen and his group, are insured by that company?

A. I don't specifically know.

Q. That's all, Doctor. Thank you.

Q. (BY MR. DOTSON): Dr. Gardner, do you know Dr. Hansen?

A. Very casually. I know who he is.

Q. Did you see him this morning before trial?

A. I did see him this morning.

Q. First time you saw him, did you recognize him?

A. No, I did not.

Q. That's all I have. And would you just leave your CV there on the stand, please? I'm going to make that as an exhibit later. Thank you, Doctor.

Stipulation as to MRPC, which includes Drs. Hansen, Mabry, and Halford

MR. PORTER: Your Honor, we have one additional matter. It's not rebuttal, but we would like – we would move to recall Dr. Hansen for purposes of completing our offer of proof because we overlooked asking him the question about the SVMIC.

THE COURT: Any objection?

MR. MITCHELL: Your Honor, we will stipulate that Dr. Hansen is insured by State Volunteer, if that is all they want to put him on for.

MR. PORTER: You stipulate that Dr. Hansen and his group are insured by SVMIC?

MR. MITCHELL: Yes.

MR. PORTER: That's satisfactory.

The Tennessee Rules of Evidence, as pertinent to our inquiry on this issue, are as follows:

**Rule 402. Relevant evidence generally admissible; irrelevant evidence inadmissible.** - All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules of laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible.

**Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time**. - Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**Rule 411. Liability insurance.** - Evidence that a person was or was not insured against liability is not admissible upon issues of

negligence or other wrongful conduct. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

**Rule 616. Impeachment by bias or prejudice**. - A party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness.

A review of the offer of proof made by the plaintiff indicates that the witnesses, while being insured by SVMIC, were not aware of Dr. Hansen's liability insurance, if any. In **Roberson v. Netherton**, No.01A01-9310-CV-00470, 1994 WL 164153, (Tenn. Ct. App. May 4, 1994), a medical malpractice case, plaintiffs made the same assertion as in the case at bar - that the potential bias of the defendant's experts was relevant in the case. The Court noted:

The plaintiffs merely concluded that because these experts were policy holders with SVMIC, and because they were not compensated for their testimony in this case they were biased in favor of the defendant. The introduction of evidence to show bias on the part of a witness is in the proper circumstances, admissible under Rule 411 and 616. However, that evidence is not admissible without a proper foundation. . . .

*Id.* at *2.

After reviewing the testimony, the Court stated:

In this case the plaintiffs' attorney did not lay a proper foundation for the evidence that he wanted to introduce before the jury. Neither Dr. Arnold nor Dr. Nesbitt stated that they understood how a mutual insurance company operated or that the amount of claims paid by SVMIC could potentially affect their premiums. Absent any evidence in the record to support the inference that these experts would be untruthful in order to prevent a possible increase in their premiums, the evidence offered by the plaintiffs' attorney was not admissible under either Rule 411 or Rule 616.

*Id*. at *3; *see also Patton v. Rose*, 892 S.W.2d 410, 414-15 (Tenn. Ct. App.1994).

The admissibility of evidence is a matter which rests within the sound discretion of the trial court. **State v. Ballard**, 855 S.W.2d 557, 562 (Tenn. 1993); **Wright v. Quillen**, 909 S.W.2d 804, 809 (Tenn. Ct. App. 1995). The appellate court will not reverse the trial court's decision on the

admissibility of evidence absent clear abuse. ***State v. Roden***, 739 S.W.2d 6 (Tenn. Crim. App. 1987).

Under the record in this case, we cannot say that the trial court abused its discretion in granting the motion *in limine* and excluding the proffered testimony.

The last issue for review is:

> 3. Whether the trial court erred by allowing defendants to introduce any testimony by Fereidoon Parsioon, M.D. because of defendants' failure, during pretrial discovery, to disclose Dr. Parsioon as a person with knowledge or as an expert witness?

By letter from defendants dated May 4, 2000, and received by the plaintiff May 11, 2000, eleven days before the trial began on May 22, 2000, defendants listed, among others, Dr. Fereidoon Parsioon as a "may call" witness. Dr. Parsioon had not previously been identified by defendants in response to discovery as an expert witness nor as a witness with knowledge of facts. The subject witness was listed by defendants in the pretrial order, and plaintiff filed a motion prior to trial to strike this witness, among others, from the pretrial order and to exclude him as a witness in the case.

The record reflects that Dr. Parsioon was one of plaintiff's treating physicians who had previously been listed by the plaintiff as a person with knowledge of the facts. Plaintiff contends that defendants violated Tenn.R.Civ.P. 26.05 by failing to seasonally supplement the response to the previously answered interrogatories. Tenn.R.Civ.P. 26.05 provides in part:

> (1) A party is under a duty seasonably to supplement the party's response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters; and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of that testimony.

Basically, plaintiff asserts that defendants should have listed the doctor as an expert witness and be required to show "the subject matter on which [he] is expected to testify, and the substance of that testimony."

The trial court delayed its ruling on the admissibility of testimony of this witness until he was called to testify and, at the trial, sustained an objection to the doctor's testimony relating to expert opinions and activities of other actors in the case. The doctor was allowed to testify about his care and treatment of the plaintiff and his opinion concerning his preoperative and post-operative actions.

The precise issue presented is whether the doctor should have been excluded as a witness because he was not listed as an expert witness by the defendants.

We believe the case is controlled by the decision of this Court in *Alessio v. Crook*, 633 S.W.2d 770 (Tenn. Ct. App. 1982), where the Court held:

> An expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer in regard to the occurrence should be treated as an ordinary witness and not as an expert as contemplated by Rule 26, TRCP.

*Id.* at 779.

In the instant case, it is clear that Dr. Parsioon was one of plaintiff's treating physicians and testified concerning the knowledge that he acquired thereby. We find no error by the trial court in allowing this testimony.

Accordingly, the judgment of the trial court on the jury verdict for defendants is affirmed, and the case is remanded for the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant, Lisa Heath, and her surety.

_____

W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.