IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 6, 2008 Session

## DONALD W. McCUTCHEON, ET AL. V. TND ASSOCIATES, L.P., ET AL.

Appeal from the Chancery Court for Roane County
No. 15373    Frank V. Williams III, Chancellor

No. E2007-01073-COA-R3-CV - FILED APRIL 30, 2008

The trial court awarded the plaintiff homeowners judgment against their residential building contractor for damages sustained by the plaintiffs when the slope upon which their home was constructed failed. The defendant contractor appeals, arguing that the trial court abused its discretion by allowing an expert witness to testify outside his area of expertise and by allowing another witness to testify as an expert when the plaintiff had failed to identify him as a witness before trial. Upon careful review of the record, it is our determination that the trial court did not abuse its discretion in the admission of the testimony of these witnesses. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and NORMA McGEE OGLE, Sp. J., joined.

Christopher D. Heagerty, Knoxville, Tennessee, for the appellants, TND Associates, L.P., and TND, Inc.

Robert H. Green and Catherine E. Shuck, Knoxville, Tennessee, for the appellees, Donald W. McCutcheon and Sue K. McCutcheon.

## OPINION

### I. Background

In March of 2001, Don and Sue McCutcheon entered into an agreement with contractor TND, L.P.[1] ("TND") for the construction of a house in the Crystal Cove Subdivision in Rockwood, Tennessee. The construction site was an extremely steep slope on the bank of Watts Bar Lake. During the course of construction, heavy rain washed dirt away from the foundation at the rear portion of the house, prompting TND to construct protective walls to prevent further washouts. These efforts proved unsuccessful, however, and over the next three years, open cracks began to appear in the soil near the rear corners of the house, the back inside basement wall began bowing and separating from the floor, and the floor began to crack in several places. Upon advice of TND, the McCutcheons covered the slope adjacent to the rear portion of their house with black plastic and built decks over the area. Despite these and other measures taken by the McCutcheons, there was a massive failure of the slope in July of 2005. As a result, dirt fell away from the rear of the house, and a portion of the foundation was exposed; bricks on the house cracked; and the decking lost its support, pulled away from the house, and bowed and fell sideways. Thereafter, the McCutcheons consulted S & ME, an engineering firm, who advised the McCutcheons to install a "soil nail wall[2]" at the base of the home's foundation as a stabilizing device. The McCutcheons employed Hayward Baker, another engineering firm, to install the soil nail wall and since its installation, no further movement of the house has been detected. It appears that the installation of devices known as gabion baskets will also be necessary to ensure against future instability problems; however, these devices have not been installed due to cost constraints.

In September of 2005, the McCutcheons filed suit against TND, alleging, among other things, that TND "did not do proper engineering for placement of the house on the lot nor proper construction to assure the house, as placed on the lot, would be stable." The complaint sought damages and charged TND with breach of contract, breach of express warranty, and "negligence in the excavation of the lot, failing to adequately support the house on the slope, failure to perform soil tests prior to construction, and ultimately, for not constructing the house in good and workmanlike manner." During the subsequent trial of the case in February of 2007, the McCutcheons called various witnesses to testify on their behalf, including two geotechnical engineers, William Rosen and Dennis Huckaba. On April 25, 2007, the trial court entered final judgment, awarding the McCutcheons apportioned damages against TND in the amount of $400,992.90, which represented 70% of total damages due in the amount of $572,847. TND appeals.

---

[1] TND, Inc. is TND's general partner and joins TND, L.P. in this appeal. In this opinion, "TND" designates both of these parties.

[2] According to testimony presented at trial, construction of the soil nail wall entails drilling and grouting horizontal elements called soil nails into the slope. Wire mesh is then placed over the face of the slope and is covered with a cement-like material. Steel plates are then placed over the soil nails, and they are tightened with bolts.

## II. Issues Presented

TND presents two issues for our review which are restated as follows:

1) Whether the trial court erred by allowing Dennis Huckaba to give expert testimony outside of his area of expertise.

2) Whether the trial court should not have allowed William Rosen to testify as an expert witness because he was not identified as such prior to trial.

## III. Analysis

### A. Standard of Review

In a non-jury case such as this one, we review the record de novo with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are reviewed de novo and are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn. 1993). A trial court's decisions regarding the admission of evidence will not be overturned absent a showing of abuse of discretion. *Otis v. Cambridge Mut. Fire Ins.*, 850 S.W.2d 439, 442 (Tenn. 1992). Under the abuse of discretion standard, a trial court ruling will not be disturbed if reasonable minds can disagree as to its propriety, and no abuse of discretion will be found unless the trial court applied an incorrect legal standard or reached a decision against logic or reasoning which causes an injustice to the party complaining. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). An abuse of discretion occurs when the lower court's decision is without a basis in law or fact and is, therefore, arbitrary, illogical, or unconscionable. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000).

### B. Mr. Huckaba's Testimony

The first issue we address is whether the trial court erred by allowing geotechnical engineer Dennis Huckaba to give expert testimony outside of his area of expertise.

At trial, geotechnical engineer Dennis Huckaba testified that in March of 2005, while employed by the S & ME engineering firm, he visited the McCutcheon property at the request of TND and advised TND that "there . . . appeared to be [a] pretty big problem getting ready to occur or that was occurring." Mr. Huckaba further testified regarding his observations when he returned to the property on behalf of S & ME in July of 2005 when the McCutcheons contacted that engineering firm after the massive failure of the slope underlying their home. At trial, Mr. Huckaba was asked the following questions, based upon his observation of the home's foundations at the time of the aforementioned installation of the soil nail wall:

3

Q. When you looked at the foundation as it was exposed during the installation of the nail wall could you see basically the thickness of the foundation and the footers or a portion of them?

A. A portion of them, yes.

Q. All right. In the portion of them that you could see based on your experience as a geotechnical engineer - - and I assume, have you designed or is it in your field to work with structural engineers on steep lots with regard to foundations?

A. It is.

Q. And in your experience was the depth of the foundations that you saw appropriate for a lot of that size with the type of soil that you saw?

Before Mr. Huckaba could respond, counsel for TND entered an objection that Mr. Huckaba was not qualified to answer this question. Thereafter, the trial court allowed counsel for each side to conduct voir dire of the witness, which began with the attorney for the McCutcheons, as follows:

Q. As a geotechnical engineer have you in the past in your career, in your firm, worked with structural engineers with regard to the design of foundations?

A. We have.

Q. And when you do that your role is, in doing the geotechnical study, to assist the structural engineer?

A. That is correct.

Q. And together, the structural engineer and the geotechnical engineer as a team, contributing their own expertise, come up with designs for foundations for lots like the McCutcheons?

A. That is correct.

Q. And in performing that function you have seen the designs that come forward and are used on lots that are steep in nature?

A. That is correct.

4

Counsel for TND then also conducted voir dire of the witness, as follows:

> Q. Are you a structural engineer?
>
> A. No.
>
> Q. And during your - - you recall this deposition we took . . . on January the 8th (indicating)?
>
> A. I do.
>
> Q. You were asked . . . [h]ave you reached any conclusion as to what kind of foundation system that house needed? No. . . . Is it outside your area of expertise to determine what kind of foundation system it needed? . . . Answer: Yes.

At the conclusion of this brief voir dire, counsel for TND argued that Mr. Huckaba was being asked to render an opinion outside of his area of expertise, stating "[Mr. Huckaba] consults, he doesn't design. He doesn't know whether it's proper or not because he's not a structural engineer." As set forth below, the trial court determined that Mr. Huckaba should be allowed to testify, with certain restrictions:

> Well, I'll allow him to express an opinion, given these footings, on that lot, whether or not the material underneath them, and the way that the footers were configured. Not whether or not the footers were sufficient but the way, given the way that they were. And I'll allow him to express an opinion about the ground on which those footers stood.
>
> I think that's his area of expertise; that's his contribution to the team effort in designing these things, is to tell what the ground will stand and what sort of material is there and what needs to be constructed in order for the ground to support it.

After this ruling, Mr. Huckaba testified that in his opinion as a professional engineer, the depth of the foundation that he saw was not adequate, based upon his experience and his observation as to the configuration of the lot and the quality of the soil. Thereafter, Mr. Huckaba further testified that he also held opinions set forth in an exhibit designated Geotechnical Expert Opinions, including the following:

> The foundation should have been designed by an engineer and be[en] constructed much deeper to account for horizontal forces. The same

5

horizontal forces that more likely than not caused the slope failure.

Had an engineer designed the foundations for the McCutcheon home with the proper geotechnical investigation, in my experience as a geotechnical engineer I'm of the opinion that the McCutcheon home would have been stable and there likely would not have been any slope failure.

If a geotechnical firm had been asked to advise regarding geotechnical issues in the construction of the residence, the failures [of the slope relating to the McCutcheon residence] would more likely than not have been avoided.

TND argues that the trial court erred in allowing the admission of the above three statements of opinion because Mr. Huckaba admitted during voir dire that he is not a structural engineer. We disagree.

The Tennessee Supreme Court has set forth the standard governing our review of a trial court's decision regarding the qualification of a witness as an expert, as follows:

[H]owever an "expert" may be defined, he should, in order to give his opinion as an expert, have some special as well as practical acquaintance with the immediate line of inquiry. Where that line between an expert and a non-expert should be drawn must, under the varying conditions of cases and their environments, necessarily be laid down by *judex feri*; and this court will not reverse on account of the judgment of the lower court as to whether a witness offered in it is an expert, unless we can clearly see that he was in error in respect to the qualifications of the witness, and that his error was injurious.

*Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 443 (Tenn. 1992) (citations omitted). More recently, our Supreme Court has stated that factors a trial court may consider in determining the reliability of an expert's methodology include: (1) "the expert's qualifications for testifying on the subject at issue" and (2) "the connection between the expert's knowledge and the basis for the expert's opinion." *Brown v. Crown Equipment Corp.*, 181 S.W.3d 268, 274-75 (Tenn. 2005). Upon review of the record in this matter, we are compelled to conclude that Mr. Huckaba has both "special as well as practical" knowledge qualifying him to render an expert opinion as to the matters objected to and that the reliability of his methodology is confirmed by his qualifications and by the connection between his knowledge and the basis of his opinion.

Mr. Huckaba holds BS and MS degrees in civil engineering and has practiced geotechnical engineering since January of 1992. His resume, which was entered as an exhibit at trial, reveals that his fields of competence include "shallow and deep foundations" and "field testing and observations"

6

and shows that he has extensive experience in assessing the stability of building sites, based upon his analysis of factors that include subsurface soil conditions and slope stability, and in making recommendations to address problems of instability with respect to structure foundations. As one example of past projects Mr. Huckaba has worked on, we note the following:

> Arkansas, Illinois, Indiana, Kentucky, Mississippi, New Mexico, Ohio, Oregon, Tennessee, Virginia, and West Virginia. Project Manager for over 300 cellular tower sites in various cities across these states. A geotechnical study was performed on each site and design parameters were provided for foundation design. In some cases, actual foundation design was provided.

Further, as noted, Mr. Huckaba testified during voir dire that, although he is not a structural engineer, he has worked with structural engineers to create foundation designs.

TND also asserts that "in his deposition Mr. Huckaba testified that he had not reached any conclusion as to what kind of foundation system the house needed, that it was outside his area of expertise to determine what kind of foundation system the McCutcheon home needed." In support of this assertion, TND references the trial transcript wherein counsel for TND read from Mr. Huckaba's deposition, as follows:

> Q. What design would you have suggested that was any different from the design which was implemented by TND? Answer: That I don't know for sure. I mean, I would work with a structural engineer to give him some parameters or soil pressure.
>
> . . .
>
> And so forth. Resistence of foundation. The construction would come up - - the construction engineer would come up with the design for the
>
> . . .
>
> [f]or the, and then that's the end of it.

It appears from the transcript that at this point, counsel for TND resumed questioning Mr. Huckaba, as follows:

> Q. Again, I ask you: Foundation design is not in your area of expertise?
>
> A. As far as putting the, you know, rebar and the foundation it is not.

7

We believe the deposition and trial testimony set forth above confirms that Mr. Huckaba is not an expert in foundation design in the sense that he creates the design on his own and determines the placement of all design elements, such as rebar. However, this testimony does not belie the other evidence we have noted showing that Mr. Huckaba works in collaboration with others to produce a finished design, and it is clear from the record and stands to reason that, in this capacity, Mr. Huckaba has accumulated sufficient experience and knowledge to render the three opinions in the document entitled Geotechnical Expert Opinions, which are objected to by TND. Whether the foundations of the McCutcheon's home should have been deeper, and whether the home would have been more stable had the foundations been designed by an engineer with the advice of a geotechnical firm are all matters with respect to which Mr. Huckaba was qualified to give an expert opinion. As the Supreme Court of this state specifically acknowledged in ***Brown***, "[a]n expert may reach a conclusion from observations based upon his or her extensive and specialized experience." ***Brown***, 181 S.W.3d at 277. That is precisely what Mr. Huckaba did in this matter. TND presents no argument as to why Mr. Huckaba's knowledge and experience as established at trial fail to qualify him to render the opinions in controversy, and we find no error in their admission as evidence.

### B. Mr. Rosen's Testimony

TND also argues that the trial court erred in allowing geotechnical engineer William Rosen to testify as an expert witness because Mr. Rosen was not disclosed as an expert witness before trial began, despite the following requirements of the Tennessee Rules of Civil Procedure:

> A party is under a duty seasonally to supplement the party's response with respect to any question directly addressed to . . . the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of that testimony.

Tenn. R. Civ. P. 26.05(1). TND also references the amended agreed scheduling order entered in this matter on August 29, 2006, which provided in pertinent part as follows:

> On or before November 1, 2006, Plaintiffs shall disclose to Defendants the identity of all liability and damages experts to be called by Plaintiffs at trial, identifying the subject matter and the substance of the facts and opinions to which the expert is expected to testify and the summary of the grounds for each opinion.

In addition, TND asserts that in his deposition on January 9, 2007, Mr. Rosen attested that he had not been asked to render any opinion with respect to the work of TND. TND contends that the trial court should have excluded Mr. Rosen's testimony upon objection at trial by counsel for TND and that this is particularly so, given the facts that this is a negligence case and Mr. Rosen was being asked to render an opinion as to the cause of damages. Specifically, TND argues that the trial court erred in allowing Mr. Rosen to give his opinion as to whether the foundation footer at the base

8

of the rear wall was proper for the McCutcheon house, whether the foundations were "constructed inadequately to support the home, " and whether cracks Mr. Rosen observed in the rear wall of the house were due to inadequate foundations and improper soil beneath the foundations. We find no merit in this argument.

Counsel for TND argued at trial that he was entitled to know beforehand if Mr. Rosen would be giving expert opinion testimony and what his testimony would be. In response, the trial court noted that the opinion questions asked of Mr. Rosen at trial were the same questions asked of him by TND's attorney during depositions.

> MR. HEAGERTY: . . . If he's going to expand on anything, if he's going - - if he was going to give opinions in this case I'm entitled to know what those opinions were so I could examine him fully. And that was not done.
>
> THE COURT: I completely agree with you, except if the intent of the Rule that allows you to do that was, in fact, satisfied by the fact that during the deposition those questions were asked and answered, then the issue of the process by which that occurred is not going to prevent this man from testifying.
>
> . . .
>
> If the questions were asked in the deposition and he expressed his opinions, then he can express them here today. You've had that information in advance of trial and I think that's good enough.

Upon our careful review of the record, including the pertinent portions of the transcripts of Mr. Rosen's trial and deposition testimony discussed below, we find no error in the trial court's ruling.

At trial, Mr. Rosen testified that he is a geotechnical engineer and is the Knoxville manager of Hayward Baker, the engineering firm that installed the soil nail wall to prevent further slope movement. Mr. Rosen stated that he visited the McCutcheon property on several occasions before and during the installation of the soil nail wall. He attested that in preparing the slope for installation of the wall, soil was excavated around the rear portion of the home, exposing the footings, or footers, at the two rear corners of the house. Mr. Rosen was then shown a photograph, which he confirmed was a photograph of one of the footers he had seen, and was asked the question, "[i]n your experience, looking at that footer is it proper for this residence?" Before Mr. Rosen could respond to this question, TND's attorney raised an objection upon grounds that Mr. Rosen was offering an opinion of which TND had not been previously apprised. Thereafter, with the trial court's permission, Mr. Rosen further testified as follows:

Q. Have you made any observations on your own of the composition of the soil under the McCutcheon home?

A. I made that in the process of reviewing the construction of our soil nail wall, yes.

. . .

Q. Did you make any observations or form any opinions with regard to the foundation of the home?

A. Yes, I did.

Q. And what did you observe and what opinions did you form?

. . .

A. It appeared to me that the foundations were constructed inadequately to support the home.

. . .

(Emphasis added). Later, again over objection of TND's attorney, Mr. Rosen also testified as follows regarding cracks he observed in the rear wall of the home:

Q. Did you observe any other problems, such as cracking, with regard to the McCutcheon home?

A. I noticed a number a [sic] diagonal cracks as well as horizontal cracks in the rear wall of their home.

Q. Are the cracks that you observed related to the improper - - inadequate foundation and the improper soil underneath the foundations?

A. It would be my opinion that that's correct.

In his deposition of January 9, 2007, Mr. Rosen had previously given the following testimony in response to questions from counsel for TND:

Q. Okay. Have you made any observation on your own of the composition of the soil under the McCutcheon home?

A. Yes. There were several times when I was on site during the

10

construction that I observed the soils beneath the McCutcheon home.

Q. When you made those observations, what were those observations?

A. It appeared to me to be some fill had been placed on the slope beneath the McCutcheon residence at the rear of the house. Based on visual observation, it appeared to be probably 18 inches to two foot is the minimum that had been placed. There appeared to be some remnants of some topsoil, root structure of some trees and vegetation that was in place underneath the foundation area of the McCutcheon home. From that point on down, it appeared to be residual soil at a depth of anywhere from two-to-three feet below the footing elevations.

Q. Did you make any observations or perform any opinions with regard to the foundation of the home?

A. There were several areas that as we went through the construction process and tried to make sure that we were providing a stable repair to the slope in support of the McCutcheon home that portions of the foundation did not appear to be constructed properly in my opinion. Several of the areas that we observed, the foundation was not what you would call a typical foundation in that it fully supported the rear wall of the McCutcheon home.

Q. Would your observations with regard to the foundation be limited to the rear of the home?

A Just areas that we exposed during our construction period which was mainly the rear of the home.

Q. You said they didn't appear to be constructed properly. In what regard were they constructed improperly?

A. Through my experience in looking at foundations, I have seen instances where excavations have been made and soil has been allowed to slough off into the excavation for that foundation and left in place. Consequently, it develops an uneven bearing surface which typically looks like an inverted pyramid.

. . .

11

Q. Did you observe any other problems with regard to the construction of the McCutcheon home?

A. There were several places where there were cracks in the brick in the rear retaining wall, or rear wall of the residence.

We have heretofore noted that "the rules concerning discovery were promulgated to allow the parties to ascertain relevant facts pertaining to their case, thus narrowing the issues in order to reach a decision on the merits without 'trial by ambush.'" *Austin v. City of Memphis*, 684 S.W.2d 624, 632 (Tenn. Ct. App. 1984). Based upon the above cited testimony and the record otherwise, we must conclude that although the McCutcheons failed to comply with requirements of Rule 26.05 and that portion of the trial court's August 29, 2006 order requiring disclosure of Mr. Rosen as an expert witnesses, such failure was harmless. TND cannot reasonably claim that it was surprised by Mr. Rosen's testimony, given the fact that TND's attorney elicited comparable testimony from Mr. Rosen several weeks before trial. There was no "trial by ambush" in this case, and the trial court did not abuse its discretion by allowing Mr. Rosen's testimony.

Furthermore, it is our determination that Mr. Rosen was not an expert witness subject to the disclosure requirements of Rule 26.05, based upon our prior holding in *Alessio v. Crook*, 633 S.W.2d 770 (Tenn. Ct. App. 1982). In that medical malpractice case, the plaintiffs contended that the defendant doctor violated Rule 26.05 because he failed to supplement answers given in interrogatory by a treating surgeon, whom the defendant had indicated he would call as an expert witness, to conform with testimony that such witness would later give at trial. In his complaint, the plaintiff in *Alessio* had alleged that the defendant doctor's negligent failure to review an x-ray of the plaintiff's lung, and resultant failure to discover a cancerous mass on the lung caused the plaintiff to have the entire lung removed seven months later. In a supplemental response to interrogatories, the defendant advised the plaintiff that he would call the surgeon who had removed the plaintiff's lung as an expert witness and that the surgeon would testify that even had he seen the x-ray seven months earlier, he would have still removed the entire lung because when a cancerous mass is located where plaintiff's was "removal of the cancerous segments is almost impossible because the mass is situated on top of the pulmonary and bronchial vessels supplying the lung. Once those vessels are removed the lung must be removed." At trial, the surgeon testified that he removed the lung because he was worried about cancer in the plaintiff's lymph nodes, and the plaintiff argued that the defendant was aware of this change in testimony and violated Rule 26.05 by failing to inform the plaintiff of the change. As follows, however, we determined that the surgeon was not an expert witness within the contemplation of Rule 26.05, based upon our analysis of comparable federal law:

Rule 26, TRCP, is in all particulars material to our inquiry identical to Rule 26, Federal Rules of Civil Procedure.

Rule 26(b)(4), FRCP, is accompanied by the following from the Notes of the Advisory Committee on Rules:

12

"Subdivision (b)(4) - Trial Preparation: Experts. This is a new provision dealing with discovery of information (including facts and opinions) obtained by a party from an expert retained by a party in relation to litigation or obtained by the expert and not yet transmitted to the party. The subdivision deals separately with those experts whom the party expects to call as trial witnesses and with those experts who have been retained or specially employed by the party but who are not expected to be witnesses. It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness."

Notes of Advisory Committee, Rule 26, Federal Rules of Civil Procedure.

An expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer in regard to the occurrence should be treated as an ordinary witness and not as an expert as contemplated by Rule 26, TRCP:

In the instant case [the surgeon] did not acquire his information in preparation for trial, rather it was gathered "because he was an actor or viewer with respect to transactions or occurrences" that were the "subject matter of the lawsuit." [The witness] was one of plaintiff's treating physicians. He saw plaintiff in consultation with plaintiff's family physician and, with plaintiff's consent, [the witness] performed the operation. [The witness] was available to all parties including the plaintiff.

*Id.* at 779-80.

As we have indicated, Mr. Rosen was part of an engineering firm employed to stabilize the slope underlying the McCutcheon's home. We find no meaningful distinction between Mr. Rosen's role as a treating engineer in the instant matter and the role of the treating surgeon in *Alessio*. Like the surgeon in that case, Mr. Rosen did not acquire the information he testified to in preparation for trial, but rather he gathered it as "an actor or viewer with respect to transactions or occurrences that were the subject matter of the lawsuit." And the substance of Mr. Rosen's testimony as to the relation between the construction of the McCutcheon's home and its instability came from observations he made during his attempts to resolve the McCutcheon's problem. *See also* **Heath v. Memphis Radiological Professional Corp.**, 79 S.W.3d 550, 559 (Tenn. Ct. App. 2001); **Small**

*ex rel Russell v. Shelby County Schools*, No. W2007-00045-COA-R3-CV, 2008 WL 360925, slip op. at *11-13 (Tenn. Ct. App. W.S., filed Oct. 9, 2007).  Accordingly, it is our determination that Mr. Rosen was not an expert witness subject to the requirements of Rule 26.05.

### *IV. Conclusion*

For the foregoing reasons, we affirm the judgment of the trial court. Costs of appeal are assessed to the appellants, TND Associates, L.P. and TND, Inc.


_____
SHARON G. LEE,  JUDGE