**CRABTREE MASONRY CO.,
INC., Petitioner,**

v.

**C & R CONSTRUCTION, INC.,
Respondent.**

Supreme Court of Tennessee.

Dec. 15, 1978.

William M. Barker, Chattanooga, for petitioner; Dietzen, Dietzen & Barker, Chattanooga, of counsel.

Herbert A. Thornbury, Chattanooga, for respondent; Wolfe, Thornbury & Rotroff, Chattanooga, of counsel.

## OPINION

BROCK, Justice.

This is an action by a subcontractor against the general contractor to recover damages for breach of the subcontract. Crabtree Masonry Co., Inc., sued C & R Construction, Inc., and recovered a jury verdict, approved by the trial judge, in the sum of $3,665.00. The Court of Appeals reversed the judgment and dismissed the complaint. We granted certiorari.

On June 3, 1975, C & R was granted the contract to construct an addition to Baroness Erlanger Hospital in Chattanooga. C & R, in turn, entered into a subcontract with Crabtree on June 19, 1975, for performance of all the masonry work on the project.

Under the contract, Crabtree was scheduled to commence work on July 31, 1975. However, work was not started at that time because a dispute arose between Crabtree and C & R Construction. At issue in the dispute was whether Crabtree should make a rebate of $1,200.00 to $1,400.00 to C & R. The rebate was demanded by C & R and arose out of a misunderstanding between the parties respecting the question whether certain foundation walls of the proposed structure were required by the building plans and specifications to be of masonry construction and, thus, constituted a part of the obligation of Crabtree under its subcon-

tract, or were to be of concrete which would not constitute any part of the obligation of Crabtree under the subcontract. This misunderstanding was settled by the architect who clarified or modified the plans and specifications to eliminate the wall entirely. At this point C & R insisted that Crabtree give a rebate as above mentioned, but Crabtree refused to do so, insisting that it had not made any provision in its bid or in the contract price of the subcontract for the walls in question to be of masonry construction and, therefore, that there was no occasion for a rebate.

The reversal by the Court of Appeals of the jury verdict and judgment of the trial court was based upon its conclusion ". . . that under the undisputed proof reasonable minds must agree that plaintiff's refusal to begin construction because of the dispute over the rebate was not warranted and that defendant was justified in terminating the contract."

It is the insistence of Crabtree in this Court that the Court of Appeals in reaching that conclusion has failed to give due and proper weight to the verdict of the jury, approved by the trial judge, and has taken upon itself the function of choosing between conflicting evidence and inferences to be drawn therefrom, thereby depriving Crabtree of its right to a jury trial. Crabtree insists that there is material evidence in the record to support jury findings that (1) it did not refuse to begin work at the appointed time; that, instead, it was C & R who refused to permit Crabtree to begin work unless and until Crabtree should agree to make the claimed rebate; and (2) in any event, Crabtree was justified in refusing C & R's demand for the rebate.

■ It is the time honored rule in this State that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence or to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strong-est legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury. *City of Chattanooga v. Rogers,* 201 Tenn. 403, 299 S.W.2d 660 (1956); *D. M. Rose & Co. v. Snyder,* 185 Tenn. 499, 206 S.W.2d 897 (1947); *City of Chattanooga v. Ballew,* 49 Tenn.App. 310, 354 S.W.2d 806 (1961); *Dynamic Motel Management, Inc. v. Erwin,* Tenn.App., 528 S.W.2d 819 (1975). Of course, these principles apply as well in a breach of contract case tried by a jury as in a personal injury or other tort action.

■ After a review of the evidence in this case under the discipline imposed by the above cited principles and authorities, we have concluded that the verdict of the jury is supported by the evidence and that the Court of Appeals erred in directing the verdict and dismissing the complaint. Thus, we find evidence which, if believed by the jury, would support a finding that Crabtree did not refuse to begin construction but, rather, that C & R refused to agree for Crabtree to begin construction until it should agree to pay the rebate. For instance, Mr. Crabtree testified as follows:

"Q.  That would have been on the 7th of August?

"A.  Yes Sir.

"Q.  All right. And tell us, who did you talk to in that conversation on Thursday?

"A.  Mr. Morrison.

"Q.  Mr. Morrison, and tell us what you said to him and what he said to you.

"A.  Well, I called, asked if he was ready for me to start down there, and he said no, said that we are going to have to talk about this rebate, and I told him that I'd decided I couldn't afford to give him money back because I didn't figure it in there, and the architect had taken it out .  ..

"Q. (Interposing) Didn't figure what in there?

"A. The walls and the materials in it.

"Q. In other words, your bid originally didn't include the walls . . .

"A. (Interposing) No, Sir, it did not.

"Q. So you were saying you couldn't give a rebate

.    .    .    .    .

"A. (Interposing) I couldn't give something I didn't . . . cause that was the reason I was going to do it on Saturday.

"Q. All right. What did he say when you told him you would not give a rebate?

"A. Well, they decided they was going to take my contract back from me, and he read a letter to me over the phone."

The mentioned letter, although dated August 7, 1975, was postmarked August 13, 1975. Following the telephone conversation above mentioned, Crabtree wrote a letter to C & R Construction Co. in which he stated:

"Dear Sir:

"In answer to our telephone conversation today, I feel that we have such a different interpretation of the plans, specs, and contract document that we both have signed we need to come to some agreement.

"As I understand the plans, specs and contract I stand ready to man the job with adequate means as necessary to complete the job as specified. The foundation walls that are in question have been omitted by the engineer because they evidently are not part of the structure. There is no indication on the plans that these walls were intended to be of masonry construction.

"You have requested that I make a cash rebate for these walls in question. I cannot agree to a rebate for materials and labor not figured in the cost of the job.

"You said on the telephone today that you intended to terminate my contract. I have quite a lot of time and expense preparing to start this project; therefore,

I feel before my contract can be terminated we should come to an arbitration to determine if I am at fault.

Sincerely,

Dickey Crabtree"

In our opinion, the above quoted testimony of Crabtree and the letter written by him on August 7, 1975, to C & R Construction constitute material evidence from which the jury could have found that Crabtree did not refuse to begin work but, in fact, offered to perform his contract and submit the matter of a rebate to arbitration, as provided by Article 14 of the contract document.

Moreover, we also find evidence in the record from which the jury could find that Crabtree was justified in refusing to agree to a rebate to C & R Construction Co. as demanded by the latter. Thus, Mr. Crabtree testified that his bid and the contract price for work to be done under the subcontract did not include any amount for construction of the walls in question and, therefore, since no such amount had been included there was nothing from which a rebate could be taken in this respect. There was also evidence from which the jury could have found that C & R Construction was granted the option by the architect of building the disputed west wall of masonry construction or of precast concrete and that Crabtree made known to C & R Construction its willingness to work on weekends, if necessary, and to furnish the labor and materials necessary for building said west wall of masonry construction if C & R should choose that option; but, that C & R, instead, chose the option of building the wall of precast concrete. In any event, the jury could have found from the evidence that Crabtree was willing to submit the rebate issue to arbitration as required by Article 14 of the contract and that C & R Construction was unwilling to do so and terminated the subcontract with Crabtree Masonry without affording the latter an opportunity to arbitrate the rebate issue. When C & R Construction finally agreed to arbitrate the issue on August 25, 1975, it had already cancelled its subcontract with

Crabtree and engaged another subcontractor to do the work.

The judgment of the Court of Appeals is reversed and that of the trial court is affirmed, with interest. Costs incurred upon appeal are taxed against C & R Construction Co. and surety.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.