IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2004 Session

## FIRST NATIONAL OF NORTH AMERICA, LLC v. MICHAEL MARKS

Appeal from the Chancery Court for Davidson County
No. 01-778-I    Irvin H. Kilcrease, Jr., Chancellor

No. M2002-03104-COA-R3-CV - Filed May 18, 2004

Plaintiff First National of North America, LLC (FNNA) brought a claim for unjust enrichment against Michael Marks. Marks had refinanced his home mortgage through Morgan International, which was owned by Jerry Levine. The purpose of the refinancing was to pay off an existing mortgage owing to a third party and to obtain net proceeds of approximately $44,000 for Marks' other needs. Unknown to Marks, the funds for Marks' loan were provided to Levine by FNNA pursuant to a Commercial Loan and Servicing Agreement between FNNA and Levine. The refinancing transaction closed and Marks received net proceeds of $44,394 at the closing; however, Morgan International/Levine failed to pay off the pre-existing mortgage owing to First American National Bank. For almost a year Marks was unaware that the pre-existing mortgage was not paid off for Levine secretly paid the monthly installments owing to First American. Once Levine ceased making the payments, First American initiated foreclosure proceedings against Marks. Marks paid the arrearage and maintained the mortgage with First American. Marks sued Levine and Morgan International. FNNA intervened as a party plaintiff against Levine and Marks. FNNA obtained a judgment based on contract against Levine but Levine was discharged in bankruptcy without any recovery to FNNA. Thereafter, FNNA obtained a judgment against Marks for $38,000, on the theory of unjust enrichment, plus pre-judgment interest. Marks appealed claiming he had a contractual relationship with FNNA that precluded a recovery under unjust enrichment. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. WILLIAM C. KOCH, JR., P.J., M.S., filed a dissenting opinion.

Peter H. Curry, Nashville, Tennessee, for the appellant, Michael Marks.

Colin J. Carnahan, Nashville, Tennessee, for the appellee, First National of North America, LLC.

1

**OPINION**

Defendant/Appellant Michael Marks (Marks) refinanced his home mortgage in December**,** 1998, at which time Marks had an existing mortgage with First American National Bank (First American) in the amount of approximately $52,750. Marks obtained financing through Morgan Financial, Inc. (Morgan Financial) and Morgan International, Inc. (Morgan International).[1] At the closing Marks executed a Note and Deed of Trust payable to Morgan International. The new loan was in the amount of $123,750. One purpose of the loan was for Marks to obtain net cash proceeds in order to have liquidity for other purposes. At the closing Marks received net proceeds of $44,394.43, with the balance going to pay closing costs, fees and the prior lien owing to First American.[2]

Morgan Financial and Morgan International were both owned by Jerry Levine (Levine). Levine, individually, not through Morgan Financial or Morgan International, had previously entered into a Commercial Loan and Servicing Agreement with Plaintiff/Appellee First National of North America, LLC (FNNA) pursuant to which FNNA agreed to provide to Levine up to $300,000 for the purpose of funding real estate loans such as the Marks loan. Marks was unaware of Levine's agreement with FNNA and did not know the source of the funds for his loan.

There ensued a confusing and disputed series of events pertaining to the execution of the loan documentation and purported recording of documents by Morgan International and/or Levine.[3] Of particular importance, the pre-existing deed of trust securing the mortgage of First American in the amount of $52,700 was not satisfied and, therefore, the First American lien was not released. Moreover, the back taxes were not paid. The loan closing statement indicated that the pre-existing mortgage and back taxes were to be paid by Morgan International. Marks was unaware of the deficiencies in the loan closing for seven months.

In June of 1999, Marks received notice from First American that it was going to foreclose on his home for non-payment of the mortgage. Marks had not made any payments to First American since December 1998, believing the First American note had been satisfied by Morgan International. Following receipt of the notice of foreclosure from First American, Marks promptly made the required payments to First American to avoid foreclosure. Marks also contacted his attorney for

---

[1]Morgan Financial facilitated the transaction and the Note was payable to Morgan International.

[2]As will be discussed later, Mortgage International did not pay off the indebtedness owing to First American nor was the lien in favor of First American released.

[3]Levine, as president of Morgan International, allegedly executed an assignment of Marks' note and deed of trust to FNNA. The closing documents that were sent to FNNA by Levine or Morgan International purportedly showed such an assignment, however, the alleged assignment from Morgan International to FNNA that was recorded in the Register of Deed's Office of Davidson County bore no signature. FNNA states that it did not realize the omission and erroneously released the necessary monies to fund the Marks' loan.

3

assistance who filed a notice of claims and defenses in the Register of Deed's Office and he also sent correspondence to FNNA addressing the now obvious deficiencies in the loan transaction and the apparent fraudulent activities of Levine.

The first correspondence from Marks' attorney to FNNA was dated July 19, 1999. FNNA made no response to the correspondence from Marks' attorney. Later on, FNNA explained that they "doubted the accuracy" of the letter and for that reason did not respond. Though doubting the accuracy of the letter from Marks' attorney, FNNA had initiated an inquiry into another loan transaction between FNNA and Levine. Particularly, there was an apparent loan to a Mr. Pruett that had closed two months prior to Marks' loan. Some apparent problems with the Pruett transaction prompted FNNA to send its investigators to Nashville in June of 1999 to look into the Pruett loan and additionally the Marks loan. At trial, FNNA's representatives indicated that they were not aware of problems with the Marks loan until December of 1999, a year after the closing, stating that they learned of it when they hired attorneys in Nashville to conduct discovery regarding the Marks note.

Marks commenced a civil action in Chancery Court of Davidson County against Levine and Morgan Financial. Additionally, Marks' attorney sent a follow-up letter to FNNA on October 13, 1999, inquiring about the status of Marks' financial obligations and informing FNNA that Marks had filed suit against Morgan Financial and Levine. FNNA again did not acknowledge or reply to the letter from Marks' attorney. On December 1, 1999, a third letter was sent by Marks' attorney to FNNA, which reiterated Marks' concern that FNNA was claiming ownership in the Morgan Financial note in dispute and threatened to make FNNA a party to Marks' litigation with Levine and Morgan Financial. On December 6, 1999, a representative of FNNA contacted Marks' counsel by telephone and advised him that FNNA had no more than a security interest in the Marks note.

Thereafter, FNNA intervened as a party-plaintiff in Marks' civil action against Morgan Financial and Levine. In April of 2001, FNNA obtained a summary judgment against Levine in the amount of $201,499.81. Levine was subsequently discharged of the indebtedness in bankruptcy and FNNA was unable to collect any sums against Levine on the judgment. FNNA also filed a motion for summary judgment against Marks. That motion was denied by the Chancellor. As a result, the dispute between Marks and FNNA went to trial. It was tried before a jury in July of 2002, at the conclusion of which the jury returned a verdict in favor of FNNA against Marks in the amount of $38,000. Pre-judgment interest was assessed later as the result of a separate hearing.

Marks presents three issues on appeal: (1) whether the trial court erred in finding that there was not a contract between Marks and FNNA, thereby allowing FNNA to proceed against Marks under the theory of unjust enrichment; (2) whether the trial court erred in allowing FNNA to recover damages against Marks under the theory of unjust enrichment, specifically, arguing that the laws governing restitution do not allow for such recovery in case of payments made by third parties to the benefitting party; and (3) whether the trial court erred in allowing a recovery against Marks under the theory of unjust enrichment, arguing that Marks was not unjustly enriched.

4

Though not stated as such by the appellant, we view the first two issues presented by the appellant as challenges to the trial court's denial of the appellant's motion for directed verdict, as distinguished from the appellant's challenge of the jury's verdict concerning the third issue presented. The trial court's rulings on the first two issues are questions of law. The standard of review for questions of law is de novo upon the record with no presumption of correctness. *Rutherford County v. Wilson,* 121 S.W.3d 591, 595 (Tenn. 2003); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). This court's standard of review of the challenge of a jury verdict is more constrained. Tenn. R. App. P. 13(d) provides that findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict. When reviewing a judgment based on a jury verdict, appellate courts are limited to determining whether there is material evidence to support the verdict. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 898 (Tenn. 1992).

I.   The first issue is whether the trial court erred in finding there was not a contract between FNNA and Marks, thereby allowing FNNA to proceed under the theory of unjust enrichment.

Marks' argues that FNNA had a contractual relationship with him. FNNA insists that there was never an existing and enforceable contract between them. Alternatively, Marks insists that if a contract did not exist between them, that FNNA had the authority under FNNA's contract with Levine to effect the necessary assignment to create a contractual relationship between Marks and FNNA. Specifically, Marks argues that the agreement between FNNA and Levine afforded FNNA the authority to effect the assignment and that FNNA strategically elected to not effect the assignment. FNNA insists that no enforceable contract ever existed between FNNA and Marks and that it did not have authority to effect an assignment to create such contract.

Precedent with regard to unjust enrichment claims clearly requires the absence of an existing, enforceable contract. *See Swafford,* 967 S.W.2d 319, 324 (Tenn. 1998); *Castelli v. Lien*, 910 S.W. 2d 420, 427 (Tenn. Ct. App. 1995). FNNA asserts that this precedent does not require the absence of the "mere possibility" that an enforceable contract could have existed, suggesting that the only "contract" between Marks and FNNA was a mere "potential privity of contract" that never came into being. FNNA further asserts that the mere prospect of the execution of an assignment or endorsement of a note does not constitute an existing and enforceable contract. Thus, FNNA concludes that it was entitled to recover damages from Marks under the theory of unjust enrichment.

Whether FNNA had a contractual relationship with Marks is a question of law. There is no presumption of correctness on appeal regarding the trial court's ruling on questions of law. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). Therefore, our review of the trial court's decision is *de novo* on the record. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

Marks construes the Commercial Loan and Servicing Agreement entered into between FNNA and Levine to give FNNA the power to cure what FNNA claims is the fatal impediment to having an enforceable contract with Marks, the unsigned Assignment from Morgan Financial to Levine. Paragraph 10 of the Commercial Loan and Servicing Agreement provides, in pertinent part:

> *Borrower will execute* and record in the appropriate real estate records *a Collateral Assignment for each Note to Lender* on a form acceptable to Lender. (emphasis added)

Paragraph 16 provides:

> Documentation of Loan. The Loan shall be evidenced by this Agreement and such other documents as Lender and its lawyers determine necessary and appropriate. *Borrower agrees to execute and deliver such documents as a condition of and at the time of the establishment of the line of credit and at other times during the term of the Loan as determined by Lender.* (emphasis added)

Marks claims that the foregoing empowered FNNA to require Levine to execute the "missing" assignment. As for the Note, Marks claims this hurdle is overcome by Paragraph 18 of the agreement, which provides:

> Endorsement or Assignment of Notes. Borrower will endorse or assign each Note in an endorsement form to the reasonable satisfaction of Lender. *Borrower also hereby grants Lender a power of attorney to endorse all Notes to Lender in the event Borrower fails to endorse such Notes.* (emphasis added)

Based upon the above, Marks concludes that FNNA has the authority to endorse the Note to itself without any participation by Levine. Therefore, Marks asserts that a contract existed or could have existed if FNNA had exercised its contractual rights with Levine.

FNNA rebuts this argument, insisting the Commercial Loan and Servicing Agreement was between FNNA and Levine, not FNNA and Morgan International, and there was never a collateral assignment of Marks' Note and Deed of Trust to Levine or FNNA. Further, FNNA insists that it had no contractual relationship with Morgan International and, therefore, no contractual authority over Morgan International. Specifically, FNNA states that it had no authority to compel Morgan International to make an assignment to Levine. It further points out that Morgan International did not assign the Note to Levine. FNNA acknowledges that it could have compelled Levine to assign the Note and Deed of Trust pursuant to the Commercial Loan and Servicing Agreement; however, FNNA insists that it could not compel Morgan International to do so. Moreover, FNNA argues that it could not require Levine to assign the Marks Note owned by Morgan International for the

6

condition precedent never occurred, that being that Morgan International never assigned the Marks Note to Levine.[4]

The basic elements of the doctrine of unjust enrichment are set forth in *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966). These elements are: (1) a benefit conferred by a plaintiff upon the defendant; (2) appreciation of the benefit by the defendant; and (3) acceptance of the benefit under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of the value thereof. *Paschall,* which delineated the circumstances under which unjust enrichment should be applied, has been consistently followed. In *Swafford v. Harris*, the Tennessee Supreme Court articulated five factors that a plaintiff must prove in order to recover under a theory of unjust enrichment:

> (1) there must be no existing enforceable contract between the parties covering the same subject matter;
>
> (2) the party seeking recovery must prove that it provided valuable goods or services;
>
> (3) the party to be charged must have received the goods or services;
>
> (4) the circumstances must indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
>
> (5) the circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Swafford v. Harris,* 967 S.W.2d 319, 324 (Tenn. 1998).

Marks' challenge to FNNA's establishment of the five factors expressed in *Swafford* is with respect to the existence of an enforceable contract. Marks insists that he has established a "contractual relationship" with FNNA, which would preclude FNNA's claim under unjust enrichment. We are unable to reach this conclusion for, in our opinion, the record fails to establish a contractual relationship between FNNA and Marks.

The Chancellor held that no contract existed between Marks and FNNA. We agree with the Chancellor, holding that no contract existed between Marks and FNNA. Accordingly, we affirm the trial court on this issue.

_____

[4]The fourth sentence of paragraph 6 of the Commercial Loan and Servicing Agreement between Levine and FNNA reads: "Lender (FNNA) is under on obligation to accept any Note, at all times reserving the right, for whatever reason determined by Lender in its discretion, to reject a Note as inadequate security." It therefore appears that FNNA had the discretion to reject the assignment of the Marks Note, which undermines Marks' argument that FNNA had a duty (and the equitable remedy) to force the assignment by Levine and/or Morgan Financial.

II.     Marks next argues that the trial court erred in allowing FNNA to recover damages against Marks under the theory of unjust enrichment, claiming the laws governing "restitution" do not allow for such recovery in case of payments made by third parties to the benefitting party.

Marks assets that the theory of "restitution" precludes FNNA's claim; however, Marks admits that this argument is solely on cases from other jurisdictions.  The premise of this argument arises from Section 110 of the Restatement First, Restitution (1937), which states:  "A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by a third person." Marks further cites 66 Am. Jur. 2d, Section 32, which provides:  "[t]he mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi contract, unjust enrichment, or restitution."

Like Marks and FNNA, we found no Tennessee authority that directly supports Marks' argument that FNNA's claim for recovery under the theory of unjust enrichment is precluded under the "restitution" theory.  aMoreover, we view the restitution theory as providing that a third person is not entitled to restitution *merely* because of the failure of performance by a third person. (emphasis added) Recognizing the limitations placed on the restitution theory by the term "merely," we find it is not in direct conflict with the long line of Tennessee cases which espouse the elements of unjust enrichment. *See Paschall's*, 407 S.W.2d at 155; *Swafford,* 967 S.W.2d at 324; *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995).  Marks' restitution theory notwithstanding, the criteria we find controlling is that espoused in *Paschall's* and its progeny, including without limitation that there must be no enforceable contract between the parties covering the same subject matter; the party seeking recovery must prove that it provided valuable goods or services; the party to be charged must have received the goods or services; the circumstances must indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and the circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment. *See Paschall's*, 407 S.W.2d at 155.  Accordingly, we find that the trial court did not err as a matter of law in denying Marks' motion for a directed verdict on this issue.

III.    Marks third and final issue is whether the trial court erred in allowing a recovery against Marks under the theory of unjust enrichment, arguing that he was not unjustly enriched.

Marks alleges that this is not a case where the defendant has accepted a benefit which he was able to retain.  He admits receiving net proceeds of $44,394.00 at closing; however, he alleges that the transaction and resulting litigation has cost him over $35,000 in legal fees and expenses.[5]

The substance of this argument is that the evidence does not support the award of damages as determined by the jury.  The question then is whether there is material evidence to support the

---

[5]Marks also alleges that the transaction and resulting litigation has disrupted his life and encumbered his house to the extent that it is now a liability rather than an asset.

jury's verdict. Tenn. R. App. P. 13(d) provides that findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict. As stated in *Hodges v. S.C. Toof & Co.,* "It is well established that when reviewing a judgment based on a jury verdict, appellate courts are limited to determining whether there is material evidence to support the verdict." 833 S.W.2d at 898.

In reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence or to decide where the preponderance lies. They are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. If there is material evidence to support the verdict, it must be affirmed. To hold otherwise would deprive the parties of their constitutional right to trial by jury. *Forrester v. Stockstill*, 869 S.W.2d 328, 329-330 (Tenn. 1994); *Crabtree Masonry Co. v. C. & R. Constr., Inc.,* 575 S.W.2d 4, 5 (Tenn.1978).

The evidence established that Morgan International made a loan to Marks in the amount of $123,750. Of this sum, $44,394 was paid directly to Marks as "net proceeds" from the loan transaction. Marks admits receiving these funds. The balance of the loan transaction was to have been paid by Morgan International to First American to satisfy the existing first lien deed of trust in the amount of $52,750, along with property taxes and closing costs, but it was not. Marks received no benefit from that portion of the loan transaction, but then, FNNA did not seek to recover that portion from Marks. Moreover, Levine, apparently in an attempt to cover up the deficiencies in the loan transaction, paid several of the monthly installments owed by Marks to First American on the mortgage that had not been paid off by Morgan International. These payments by Levine to First American resulted in a benefit to Marks for each payment by Levine relieved Marks of the obligation to make such payments.[6]

The jury was asked to decide whether Marks was unjustly enriched by any portion of the $44,394 that Marks received at closing, and, if so, in what amount. The jury rendered a verdict finding that Marks was unjustly enriched to the extent of $38,000.[7] Whether Marks was unjustly enriched to the extent of $38,000 was a jury question. There is material evidence supporting the jury's verdict. Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict. Tenn. R. App. P. 13(d). Accordingly, we affirm the jury's verdict.

---

[6]Marks paid the monthly mortgage installments to First National Acceptance Company (pursuant to instructions set forth in the monthly payment coupon book) on his new mortgage during the same few months Levine was paying the monthly installments owing to First American on Marks' pre-existing mortgage. Though FNNA did not recover the other funds it provided to Levine for the Marks loan, FNNA did not seek to recover those funds.

[7]The jury awarded FNNA a verdict of $38,000 for unjust enrichment. FNNA was additionally awarded pre-judgment interest, which resulted in an award of an additional $8,421, for a total award of $46,421.

Accordingly, we affirm the trial court in all respects and remand this matter for such proceedings as may be necessary.  Costs are assessed against Michael Marks and his surety.

_____
FRANK G. CLEMENT, JR., JUDGE