IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2008 Session

## MICHAEL SHROPSHIRE v. BETTY ROACH

**Appeal from the Circuit Court for Robertson County**
**No. 11452     Ross H. Hicks, Judge**

**No. M2007-02593-COA-R3-CV - Filed January 30, 2009**

A home seller appeals a jury verdict finding that she intentionally misrepresented water conditions in the basement in connection with the sale of her home. According to the seller, the jury verdict was against the weight of the evidence and the trial court erroneously allowed opinion testimony from the contractor who repaired the water damage. We affirm, finding that material evidence supports that the jury verdict and that the trial court did not err in allowing the testimony.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed**

PATRICIA J. COTTRELL, P.J.,M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Lee Borthick, Springfield, Tennessee, for the appellant, Betty Roach.

Steve North, Mark North, Madison, Tennessee, for the appellees, Michael Shropshire and wife, Rebecca Shropshire.

## OPINION

In October of 2005, Michael and Rebecca Shropshire bought a home in Greenbrier, Tennessee, from Betty Roach. Thereafter, the Shropshires sued Mrs. Roach[1] for damages alleging that Mrs. Roach intentionally failed to disclose and made intentional misrepresentations about water problems in the basement of the home, and that they relied upon these representations or failures to their detriment when they bought the home. According to the Shropshires, the water problems in the basement have required extensive repairs and caused a depreciation in the home's value. Mrs. Roach denied making any intentional misrepresentation about the home. In addition, Mrs. Roach maintained that any reliance the Shropshires placed on Mrs. Roach's alleged misrepresentation was

---

[1]Originally, the Shropshires also sued Mr. Eskesen, whom they hired to inspect the home prior to its purchase, but their claim against him proceeded through arbitration, and he was non-suited in this action.

misplaced since the inspection report obtained by the Shropshires before the sale noted possible water problems.

On October 10, 2007, the matter was tried before a jury. The defendant's motion for a directed verdict was denied at the close of plaintiffs' proof, and Mrs. Roach's renewed motion for directed verdict was denied at the close of the proof.[2] The jury returned a verdict for the Shropshires totaling $12,375.

Mrs. Roach moved for a new trial and asserted, among other grounds, that the weight of the evidence was insufficient to support the verdict, that the trial court erred when it twice denied Mrs. Roach's request for a directed verdict, and that the trial court erred when it allowed plaintiffs' witness, Layne Geebers, to provide opinion testimony and exacerbated this error by failing to give a curative instruction. On November 20, 2007, the trial court denied the new trial motion, and Mrs. Roach's appeal ensued.

Mrs. Roach appeals the jury award on the same grounds she raised in her motion for a new trial discussed above. Each ground will be addressed separately.

## I. VERDICT AGAINST THE WEIGHT OF THE EVIDENCE

We interpret Mrs. Roach's argument on appeal to be that the trial court first should have directed the verdict in her favor and, alternatively, should have granted a new trial on the grounds that the verdict was against the weight of the evidence. As explained in *Blackburn v. CSX Transportation, Inc.*, M2006-01352-COA-R10-CV, 2008 WL 2278497 (Tenn. Ct. App. May 30, 2008) (no Tenn. R. App. P. 11 application filed), the claim that a verdict is against the weight of the evidence is grounds for both a directed verdict and a new trial, but the standards *to be applied by the trial court* in ruling on the motions vary since the consequences are different:

> It is easy to fail to distinguish the unique aspects of a motion for a new trial with a motion for judgment as a matter of law. While both may be made after a jury has rendered a verdict, their consequences are quite different. Due to the difference in consequences, trial courts generally apply different standards to their consideration and different standards of review are applicable on appeal.
>
> A renewed motion for judgment as a matter of law may be joined, in the alternative, with a motion for a new trial under Rule 59. These motions have wholly distinct functions and entirely different standards govern their allowance. Nevertheless there has been confusion and some courts persist in stating, as the standard for judgment as a matter of law, the much more lenient test that is applicable to a motion for a new

---

[2]On appeal, the Shropshires argue that Mrs. Roach did not move for a directed verdict at the close of the proof. The trial court, however, apparently believed Mrs. Roach had so moved since the trial court denied the motion.

trial when it is based on the ground that the verdict is against the weight of the evidence.

The contrasts between the two motions are dramatic. If a motion for a new trial is granted, the case is tried again. If the motion for judgment as a matter of law is granted, the case is at an end. Because of the finality that the latter motion has, it is natural that it should be measured by a far more rigorous standard. On a motion for new trial, the court has wide discretion to order a new trial whenever prejudicial error has occurred. On a motion for judgment as a matter of law, it has no discretion whatsoever and considers only the question of law whether there is sufficient evidence to raise a jury issue. On a motion for new trial the court may consider the credibility of witnesses and the weight of the evidence. On a motion for judgment as a matter of law, it may not.

All of this has been understood for some time and is thoroughly settled in the cases. 9AWright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d§ 2531 (1995).

*Id.*, at *3-4.

In considering a motion for a directed verdict, the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Newcomb v. Kohler Company*, 222 S.W.3d 368, 390 (Tenn. 2006) (quoting *Crain v. Benton*, 823 S.W.2d 187, 195 (Tenn. Ct. App. 1991)); *Johnson v. Tennessee Farmrs Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006). On the other hand, if a motion for a new trial is filed, then the trial court is under a duty to independently weigh the evidence and determine whether the evidence "preponderates" in favor of or against the verdict. *Woods v. Herman Walldorf & Co., Inc.*, 26 S.W.3d 868, 873 (Tenn. Ct. App. 1999); *Shivers v. Ramsey*, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996); *Witter Nesbit*, 878 S.W.2d 116, 121 (Tenn. Ct. App. 1993). This role is referred to in Tennessee as that of a "thirteenth juror." *Holden v. Rannick*, 682 S.W.2d 903, 904-05 (Tenn. 1984). No one disputes that the trial court applied the appropriate standards to the two motions.

It is well established that once a trial court has approved a jury verdict, the standard to be applied *on appeal* to review the jury verdict is stringent, whether the challenge is to the failure to grant a directed verdict or a new trial. The Supreme Court has clearly provided the standard we are to use when entertaining challenges to jury findings of fact:

The applicable standard of review is set out in Tennessee Rule of Appellate Procedure 13(d), which provides, "[f]indings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." Discussing that standard of review, we have stated:

-3-

When addressing whether there is material evidence to support a verdict, an appellate court shall: (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence. *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978); *Black v. Quinn*, 646 S.W.2d 437, 439-40 (Tenn. App. 1982). Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies. If the record contains "any material evidence to support the verdict, [the jury's findings] must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury. *Crabtree Masonry Co.*, 575 S.W.2d at 5.

*Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006).

Once the trial court has approved the verdict, on appeal we are to affirm the verdict if the record contains "any material evidence." *Washington v. 822 Corp.*, 43 S.W.3d 491, 494 (Tenn. Ct. App. 2000); *Barrett v. Vann*, E2006-01283-COA-R3-CV, 2007 WL 2438025, at *11 (Tenn. Ct. App. Aug. 29, 2007) (no Tenn. R. App. P. 11 application filed); *Mabey v. Maggas*, M2006-02689-COA-R3-CV, 2007 WL 2713726, at *8 (Tenn. Ct. App. Sept. 18, 2007) (no Tenn. R. App. P. 11 application filed) ("Because we find no error in the trial court's actions as thirteenth juror, our review of the appellants' argument regarding sufficiency of the evidence is subject to the well-established 'material evidence' standard")); *Ballard v. Serodino, Inc.*, E2004-02656-COA-R3-CV, 2005 WL 2860279, at *3 (Tenn. Ct. App. Oct. 31, 2005) (no Tenn. R. App. P. 11 application filed); *Foster v. Wilson*, W2003-00872-COA-R3-CV, 2004 WL 2086320, at *2 (Tenn. Ct. App. Sept. 9, 2004) (no Tenn. R. App. P. 11 application filed); *See Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980). The Supreme Court has articulated an abuse of discretion standard in reviewing the grant or denial of a *new trial* when the issue was not sufficiency of the evidence. *Ali v. Fisher*, 145 S.W.3d 557, 564-65 (Tenn. 2004) (alleging error of trial court concerned court's pre-trial ruling as to allocation of fault). We do not discern a substantive difference applicable to the case before us between the material evidence standard and the abuse of discretion standard. If there is no material evidence to support a verdict, then the trial court abused its discretion since approving such a verdict is against logic or reasoning.[3] Consequently, the issue on appeal is whether there is material evidence to support the jury's verdict.

The crux of Mrs. Roach's arguments attacking the jury verdict is that there was no justifiable reliance by the Shropshires on any statements made by Mrs. Roach since the Shropshires were aware

---

[3]A trial court abuses its discretion "only when it applies an incorrect legal standard, or reaches a decision that is against logic or reasoning that causes an injustice to the party complaining." *Mercer*, 134 S.W.3d 121, 131 (Tenn. 2004) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

of the water problem due to Mr. Eskesen's inspection. Consequently, Mrs. Roach argues, the Shropshires cannot prevail on their intentional misrepresentation claim.[4]

The Residential Disclosure Statement provided to the Shropshires by Mrs. Roach prior to closing answered "yes" to the question whether there were past or present water intrusions/standing water in the basement. By way of explanation, Mrs. Roach included the statement "when a heavy rain last year some water in basement." Prior to buying the house, the Shropshires hired Mr. Eskesen to inspect the home. Since Mr. Eskesen's report under "minor problems" noted signs of moisture seepage in the basement, Mrs. Roach argues that the Shropshires did not prove a required element of a misrepresentation claim, namely justifiable reliance.

At trial, Mrs. Roach testified that other than the single instance referred to in the Disclosure Statement, she never had standing water in the basement. According to her, the one time water did accumulate in the basement it was gone within an hour and did not require vacuuming or mopping. Her son, however, testified that he used a shop vac to remove the standing water.

The jury heard testimony from Mr. Shropshire about questions he asked Mrs. Roach concerning a dehumidifier she kept in the basement. Mr. Shropshire testified Mrs. Roach said that the dehumidifier was in the basement to help with her granddaughter's allergies and that the basement did not get wet or flood. Mr. Stropshire testified that when he asked about the Disclosure Statement, Mrs. Roach said last year when it rained hard the wall under the porch was wet but that there had never been standing water in the basement. Mr. Shropshire questioned the inspector, who found signs of moisture in the basement. According to Mr. Shropshire, while the inspector noted the signs of water, the inspector said it was consistent with what Mrs. Roach said. The inspector did not pull up the carpet or remove the paneling. At the home closing, Mr. Shropshire testified he asked Mrs. Roach directly about whether the basement floor got wet and she said no. The inspector's report failed to check the boxes that indicated "Major Water Problems," "Persistent Flooding Likely," "Persistent Minor Seepage Likely" and other types of water problems.

Mrs. Roach relies on *Israel v. Williams*, M1999-02400-COA-R3-CV, 2000 WL 1183081 (Tenn. Ct. App. Aug. 22, 2000) (no Tenn. R. App. P. 11 application filed), which found that notice of water problems removed justifiable reliance in a negligent misrepresentation claim. Mrs. Roach's reliance on *Israel* is misplaced for several reasons. First, *Israel* was decided upon summary judgment with no disputed issues of fact. Here, Mr. Shropshire and Mrs. Roach give different versions of her representations, and the jury reconciled the disputed areas. Second, *Israel* pertained to negligent misrepresentation and not intentional misrepresentation as alleged by the Shropshires. Third, the evidence of water damage known to the buyers in *Israel* was more extensive than that

---

[4]Justifiable reliance is one element of an intentional misrepresentation claim. In order to be successful on an intentional misrepresentation claim, the representation must be of a false existing or past material fact which was made knowingly, without belief in its truth, or recklessly and was reasonably relied upon by the plaintiff causing damage. *Walker v. Sunrise Pontiac - GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008).

known by the Shropshires, the alleged misrepresentations by Mrs. Roach were more elaborate, and the buyers here asked for more information than in *Israel*.

Based on the foregoing, using the standard of review from *Whaley*, we find there is material evidence to support the verdict, and the jury verdict is affirmed.

## II. TESTIMONY OF LAYNE GEEBERS

Before trial, the Shropshires identified the contractor who repaired the basement, Layne Geebers, as a witness about the repair work performed. Counsel for Mrs. Roach states in her brief that in a pre-trial conference she expressed no objections to Mr. Geebers testifying about repairs but would object to expert testimony from Mr. Geebers.

According to Mrs. Roach, Mr. Geebers inappropriately testified that the water damage to the basement occurred over a period of years and that counsel for the Shropshires in their closing argument inappropriately cited Mr. Geebers' testimony to support this conclusion.

The standard of review we are to employ to appeals based on the admissibility of evidence is clear and well established. The admissibility of evidence is within the discretion of the trial court, and the decision to admit or exclude evidence is reversible only upon a clear abuse of discretion by the trial judge. *Mercer v. Vanderbilt University*, 134 S.W.3d at 131 (citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442-43 (Tenn. 1992)). *See Biscan v. Brown*, 160 S.W.3d 462, 469 (Tenn. 2005). A trial court abuses its discretion "only when it applies an incorrect legal standard, or reaches a decision that is against logic or reasoning that causes an injustice to the party complaining." *Mercer*, 134 S.W.3d at 131 (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

During his testimony, Mr. Geebers testified that his examination of the dismantled basement showed efflorescence which is "salts that come through on concrete block over a duration of time when moisture comes through that." He testified that the furring strips applied to the brick wall as a means to fasten a finish were discolored and rotting away. Mr. Geebers testified that these effects happened when flooding occurs over time. There was no objection during his testimony, and counsel for Mrs. Roach cross-examined Mr. Geebers on the accuracy of this testimony.

We do not believe admission of this proof, even assuming counsel had appropriately objected, to be an abuse of discretion. Mr. Geebers was simply explaining the definition of efflorescence and the condition of the basement walls as he found them.

Finally, with regard to the requested curative instruction, even if Mr. Geeber's testimony was inadmissible, failure to give a curative instruction is not reversible error. Reversal for failure to give a special instruction is appropriate "only when the improper denial of a request for a special jury instruction has prejudiced the rights of the requesting party." *Johnson v. Tennessee Farmers Mutual*

*Insurance Company*, 205 S.W.3d 365, 372 (Tenn. 2006) (citing *Spellmeyer v. Tenn. Farmers Mut. Ins. Co.*, 879 S.W.2d 843, 846 (Tenn. Ct. App. 1993)).

> It is not sufficient that refusal to grant the requested instruction may have affected the result; "[i]t must affirmatively appear that it did in fact do so." *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992).

*Johnson*, 205 S.W.3d at 372.

Based upon this record, we do not find failure to give a curative instruction constituted reversible error. The jury verdict is affirmed. Costs of this appeal are taxed to the appellant, Betty Roach, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, P.J., M.S.