# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 7, 2020

## MARTHA GILMORE, EXECUTRIX OF THE ESTATE OF NANNIE SUSAN CARPENTER v. NOL, LLC A/K/A PREMIER RADIOLOGY

**Appeal from the Circuit Court for Davidson County**
**No. 17C2479      Kelvin D. Jones, Judge**

_____

### No. M2019-01308-COA-R3-CV

_____

A physical therapy patient standing just outside a building was struck by the building's automatic door, causing her to fall and suffer broken bones. The patient sued the owner of the building, asserting negligence and premises liability. The owner asserted the affirmative defense of comparative fault. The jury returned verdicts finding both parties negligent and assigned more fault to the patient than to the building owner, thus barring the patient from any recovery. The patient moved for a new trial, arguing that the jury's verdict finding her to be at fault was contrary to the weight of the evidence. The trial court denied her motion, and the patient appealed. We conclude that the trial judge did not err in its role as the thirteenth juror, but we vacate the court's judgment finding the patient comparatively at fault because no material evidence was introduced at trial to support this aspect of the jury's verdict.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Edmund J. Schmidt, III, and Jackie E. Sharp, Jr., Nashville, Tennessee, for the appellant, Martha Gilmore, executrix of the Estate of Nannie Susan Carpenter.

Raymond D. Lackey, Franklin, Tennessee, for the appellee, NOL, LLC.

**OPINION**

### I. FACTUAL AND PROCEDURAL BACKGROUND

Nannie Susan Carpenter was eighty-four year old on April 21, 2017, when she went to her physical therapy appointment at The Anderson Building, in Nashville. The Anderson Building is owned and managed by NOL, LLC a/k/a Premier Radiology ("NOL"). Access to the Anderson Building is controlled by a telescoping automatic door that slides open when a person is detected by electronic sensors. When Ms. Carpenter was exiting The Anderson Building following her appointment on April 21, 2017, the automatic door closed while she was standing just outside the threshold of the doorway. The impact from the door caused Ms. Carpenter to fall and suffer fractures to her femur and humerus bones.

Ms. Carpenter filed a lawsuit against NOL on October 4, 2017, alleging negligence and premises liability as a result of an unreasonably dangerous condition. Ms. Carpenter sought compensatory damages, including medical costs, pain and suffering, and the loss of her enjoyment of life. NOL filed an answer denying liability and asserting comparative fault as an affirmative defense.

The parties tried the case before a jury on April 29 and 30, 2019. The jury returned a verdict finding that both NOL and Ms. Carpenter were negligent and that Ms. Carpenter had sustained damages in the amount of $500,000. The jury allocated fault between the parties, finding Ms. Carpenter to be 77% negligent and NOL to be 23% negligent. Because the jury found Ms. Carpenter to be over 50% at fault, the trial court entered a judgment in favor of NOL and dismissed Ms. Carpenter's complaint.

Ms. Carpenter moved for a new trial pursuant to Tenn. R. Civ. P. 59.06, asserting that the jury's comparative fault verdict was contrary to the weight of the evidence. Ms. Carpenter also asserted that the court made erroneous evidentiary rulings that more likely than not affected the jury's verdict and resulted in manifest injustice to her. Ms. Carpenter asked the court to exercise its authority as the thirteenth juror to order a new trial. The trial court held a hearing on June 21, 2019, to consider Ms. Carpenter's motion and stated the following from the bench:

> All right. The Court in this matter must consider whether the record contains any material evidence to support the verdict, the jury's findings must be affirmed. And when sitting as the 13th juror the Court, after weighing the evidence of the trial court, if the Court is satisfied with the jury's verdict, the Court must approve that verdict.

The Court, after weighing the evidence, is satisfied with the jury's verdict and accordingly must approve the verdict. And for that reason the motion for a new trial is respectfully denied.

Then, in its written order, the trial court wrote:

The Court, acting as a thirteenth juror, having considered the filings of the parties, arguments of counsel and the evidence submitted at trial, finds that he is satisfied with the jury's verdict and Plaintiff's motion is denied.

Ms. Carpenter appealed the trial court's denial of her motion for a new trial and raised the following arguments: (1) that the trial court applied an incorrect standard in its role as the thirteenth juror and committed manifest error; and (2) that NOL offered no evidence in support of its affirmative defense of comparative fault, with the result that the jury's verdict finding Ms. Carpenter 77% at fault was insupportable and she was entitled to a new trial. Ms. Carpenter made the additional alternative argument that if we conclude material evidence supported the jury's verdict finding her negligent, the trial court committed reversible error in excluding testimony of her expert regarding whether Ms. Carpenter did anything before her fall that would have triggered the door to close on her. Ms. Carpenter passed away during the pendency of this appeal, and her executrix, Martha Gilmore, has been substituted as the appellant herein.

## II. ANALYSIS

### A. Trial Judge as Thirteenth Juror

A jury verdict is not valid until a trial judge approves it. *Wells Fargo Bank, N.A. v. Lockett*, No. E2018-00129-COA-R3-CV, 2019 WL 417998, at *3 (Tenn. Ct. App. Feb. 4, 2019). It is the law in Tennessee that when a party moves for a new trial on the basis that the jury verdict is contrary to the weight of the evidence, the trial judge is to act as the thirteenth juror. *Id.* In this role, the judge "must not defer to the jury," *id.* at *4, but "'is under a duty to independently weigh the evidence and determine whether the evidence preponderates in favor of or against the verdict,'" *id.* at *3 (quoting *Shivers v. Ramsey*, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996)). If the trial judge is not satisfied with the jury's verdict, he or she "'should set it aside.'" *Cooper v. Tabb*, 347 S.W.3d 207, 221 (Tenn. Ct. App. 2010) (quoting *Davidson v. Lindsey*, 104 S.W.3d 483, 488 (Tenn. 2003)); *see also Murdock v. Fort Sanders Reg'l Med. Ctr.*, No. E2012-01650-COA-R3-CV, 2013 WL 1460579, at *3 (Tenn. Ct. App. Apr. 11, 2013).

Before approving a verdict, a trial judge must always weigh the evidence and determine that the evidence preponderates in favor of the verdict, such that the trial judge is "independently satisfied" with the verdict. However,

the trial judge is not required to expose his mental processes in exercising his role as thirteenth juror. "In deciding [a motion for a new trial], the . . . judge is not bound to give any reasons, any more than the jury itself is bound to do so." He is not required to "make an express statement that the preponderance of the evidence supported the verdict. . . ."

*Wells Fargo Bank*, 2019 WL 417998, at *4 (quoting *Bellamy v. Cracker Barrel Old Country Store, Inc.*, No. M2008-00294-COA-R3-CV, 2008 WL 5424015, at *3 (Tenn. Ct. App. Dec. 30, 2008) (citations omitted)); *see also Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 105 (Tenn. Ct. App. 1996) ("The thirteenth juror rule requires the trial court to weigh the evidence independently, to pass upon the issues, and to decide whether the verdict is supported by the evidence.").

The trial court has broad discretion in ruling on a motion for a new trial and is not required to provide reasons for its decision to grant or deny the motion. *Cooper*, 347 S.W.3d at 221. When a trial judge approves a jury verdict without making any comments, the appellate court assumes the trial judge properly performed his or her duty as the thirteenth juror. *Id.* However, when a judge discusses the reasons for his or her decision, the appellate court reviews the reasons simply to determine whether he or she properly considered the issues "'and was satisfied or dissatisfied with the verdict thereon.'" *Id.* (quoting *Davidson*, 104 S.W.3d at 488); *see also Bellamy*, 2008 WL 5424015, at *10 ("[W]e must review his [or her] comments to ensure they do not evidence a failure to comply with the thirteenth juror standard."); *Heath v. Memphis Radiological Prof'l Corp.*, 79 S.W.3d 550, 554 (Tenn. Ct. App. 2001). The appellant has the burden of proving that the trial judge failed to carry out his role as the thirteenth juror. *Bellamy*, 2008 WL 5424015, at *6.

Ms. Carpenter's estate contends that the trial judge misconceived his duty to act as the thirteenth juror based on the judge's comment made during the hearing on June 21, 2019, that he "must consider whether the record contains any material evidence to support the verdict, [and if there is,] the jury's findings must be affirmed." The "material evidence standard" the trial judge referenced is the standard an appellate court uses when reviewing a jury verdict to determine whether sufficient evidence was introduced at trial to support a jury's verdict. Tenn. R. App. P. 13(d); *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704-05 (Tenn. 2000). As discussed above, this is not the proper standard for a trial judge to apply when faced with a motion for a new trial and acting as the thirteenth juror. Immediately after the trial judge made this comment, however, he stated:

[W]hen sitting as the 13th juror the Court, after weighing the evidence of the trial court, if the Court is satisfied with the jury's verdict, the Court must approve that verdict. The Court, after weighing the evidence, is

satisfied with the jury's verdict and accordingly must approve the verdict. And for that reason the motion for a new trial is respectfully denied.

Then, when the trial judge issued his written order denying Ms. Carpenter's motion for a new trial, he wrote:

The Court, acting as a thirteenth juror, having considered the filings of the parties, arguments of counsel and the evidence submitted at trial, finds that he is satisfied with the jury's verdict and Plaintiff's motion is denied.

The Tennessee Supreme Court has stated that an appellate court should consider a trial judge's comments "as a whole" when determining whether a trial judge misconceived his or her duty as a thirteenth juror. *Heath*, 79 S.W.3d at 555-56 (citing *Holden v. Rannick*, 682 S.W.2d 903, 905-06 (Tenn. 1984)); *see also Murdock*, 2013 WL 1460579, at *4. "Where it appears 'from statements made by the circuit judge . . . that he was really not satisfied with the verdict, it becomes the duty of this court . . . to do what the circuit judge should have done; that is, to grant a new trial.'" *Cooper*, 347 S.W.3d at 223 (quoting *Cumberland Tel. & Tel. Co. v. Smithwick*, 79 S.W. 803, 804 (Tenn. 1904)); *see also Ladd*, 939 S.W.2d at 105.

To prove she is entitled to a new trial, Ms. Carpenter's estate must show that the trial judge "was not satisfied with the verdict or misconceived its role as the thirteenth juror." *Wells Fargo Bank*, 2019 WL 417998, at *3; *see also Mabey v. Maggas*, No. M2006-02689-COA-R3-CV, 2007 WL 2713726, at *6 (Tenn. Ct. App. Sept. 18, 2007). This she cannot do. Although the trial judge initially enunciated an incorrect standard of review, he subsequently corrected himself and set forth the appropriate standard. The judge then declared that, after weighing the evidence, he was satisfied with the jury's verdict and, therefore, approved the verdict. A week later, the trial judge followed up these statements with a written order in which he repeated the proper standard of review and stated that he was denying Ms. Carpenter's motion for a new trial because he was "satisfied with the jury's verdict."

Considering the trial judge's comments as a whole and construing them together with the court's written order, we conclude that Ms. Carpenter's estate has failed to prove that the trial judge misconceived his duty to act as the thirteenth juror when he approved the jury's verdict and denied her motion for a new trial. *See Heath*, 79 S.W.3d at 556 (stating that "a court speaks through its written orders"); *see also Ladd*, 939 S.W.2d at 104 (same).

B. <u>Sufficiency of the Evidence</u>

Ms. Carpenter's estate next argues that the evidence was insufficient to support the jury's verdict finding Ms. Carpenter 77% at fault for her fall. Our Supreme Court has described an appellate court's review of a jury's verdict as follows:

> When addressing whether there is material evidence to support a verdict, an appellate court shall: (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence. *Crabtree Masonry Co. v. C & R Constr., Inc.,* 575 S.W.2d 4, 5 (Tenn. 1978); *Black v. Quinn,* 646 S.W.2d 437, 439-40 (Tenn. Ct. App. 1982). Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies. If the record contains "any material evidence to support the verdict, [the jury's findings] must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury." *Crabtree Masonry Co.,* 575 S.W.2d at 5.

*Barnes,* 48 S.W.3d at 704-05; *see also Hall v. Derrick*, No. W2003-01353-COA-R3-CV, 2004 WL 2191016, at *3 (Tenn. Ct. App. Sept. 24, 2004) (holding that when an appellate court reviews a jury's verdict, it "may not reweigh the evidence or make credibility determinations, and it must construe the evidence in the light most favorable to the verdict."). A jury verdict will not be set aside if there is any material evidence to support the verdict. TENN. R. APP. P. 13(d). "Material evidence is 'evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case.'" *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422 (Tenn. 2013) (quoting *Knoxville Traction Co. v. Brown,* 89 S.W. 319, 321 (Tenn. 1905)). This court has described "substantial and material evidence" as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002) (quoting *Papachristu v. Univ. of Tenn.*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000)). When reviewing the trial record, we must "assume the truth of all evidence that supports the verdict and discard all countervailing evidence." *McLemore ex rel. McLemore v. Elizabethton Med. Inv'rs. Ltd. P'ship*, 389 S.W.3d 764, 776 (Tenn. Ct. App. 2012) (citing *Barnes*, 48 S.W.3d at 704). "[I]f the record contains any material evidence to support the verdict the jury's findings must be affirmed." *Id.* (citing *Barnes*, 48 S.W.3d at 704).

In addition to finding Ms. Carpenter negligent, the jury found NOL was negligent, and this aspect of the jury's verdict has not been appealed. The only portion of the verdict Ms. Carpenter's estate is challenging is the jury's verdict finding that Ms. Carpenter was negligent and bore some responsibility for her fall. NOL asserted the affirmative defense of comparative fault. When a defendant asserts a plaintiff's

comparative fault, "the reasonableness of the plaintiff's conduct in confronting a risk comes into play." *Ayrhart v. Scruggs*, No. M2003-00453-COA-R9-CV, 2004 WL 2113064, at *9 (Tenn. Ct. App. Sept. 21, 2004); *see Hall*, 2004 WL 2191016, at *4 (stating that in comparative fault cases, plaintiff's reasonableness must be judged by standard of "ordinarily prudent person" in the circumstances). To prove Ms. Carpenter was negligent, NOL was required to "present some material evidence that the conduct of [Ms. Carpenter] was a proximate cause of the accident." *Whaley v. Wolfenbarger*, No. E1999-02518-COA-R3-CV, 2000 WL 116055, at *2 (Tenn. Ct. App. Jan. 28, 2000). "'In Tennessee, proximate cause has been described as that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another which, if it had not happened, the injury would not have been inflicted.'" *Id.* (quoting *Tenn. Trailways, Inc. v. Ervin*, 438 S.W.2d 733, 735 (Tenn. 1969)).

The evidence presented at trial included the surveillance video from The Anderson Building showing Ms. Carpenter leaving the building through the automatic door and falling to the ground after the sliding door came into contact with her. The video reveals that as Ms. Carpenter walked towards the automatic door, the telescoping sliding door opened, and she began walking through the doorway. Ms. Carpenter stopped in the path of the sliding door and placed her hand on the doorjamb for close to ten seconds before she continued through the doorway. She then stopped just past the threshold and was standing close to the doorjamb for about two seconds when the sliding door began closing and came into contact with Ms. Carpenter, causing her to fall over and hit the ground.

Brian Mills, a mechanical engineer, testified as an expert on behalf of Ms. Carpenter. Mr. Mills inspected the automatic sliding door at issue and testified that the door has two different types of sensors: presence sensors and motion sensors. Mr. Mills explained:

> Presence means that if I'm standing in the way of the door in the beam of its sight, the door will remain in an open position because it thinks I want to walk through.
>
> The motion detection is for when I'm approaching the door, that it detects my motion, causes the door to open so I can pass through it. When it no longer detects my motion, the door closes behind me.

Mr. Mills testified that the door's motion detection sensors worked properly. However, he explained, the presence detection sensors located above the doorway did not detect someone standing immediately adjacent to the doorjamb and failed to satisfy the industry standard. Mr. Mills testified that "the presence detection zone ended about twelve inches from the inside of the doorjamb." Mr. Mills explained the importance of this: "[I]f I'm

- 7 -

standing right here adjacent to the door, the door does not recognize me. So the door is going to respond and close." According to Mr. Mills, the presence detector sensors' failure to detect Ms. Carpenter outside their detection zone caused the automatic door to close and strike Ms. Carpenter.

> Q. Mr. Mills, why did the door come into contact with Ms. Carpenter on April 21, 2017?
> A. Because the sensors didn't recognize that she was standing in the door.
>
> Q. Had the sensors been working as it's supposed to, what should have happened?
>
> A. The door would have remained open until she left the safety zone.

Mr. Mills testified that the industry standard required the presence sensors to "match the whole open width of the door." As Mr. Mills explained, "[I]f I'm standing right here adjacent to the door, the door does not recognize me [as it should]. So the door is going to respond and close." He further testified that the industry standard requires automatic doors to remain open for at least thirty seconds when a presence sensor is triggered. The surveillance video shows that the total length of time Ms. Carpenter spent passing through the doorway, including the ten seconds during which she stopped and leaned against the doorjamb and the following two seconds when she was hit by the sliding door, was less than thirty seconds.

NOL's designated representative, Eddie Schmidt, testified at the trial by deposition. Ms. Carpenter's attorney asked Mr. Schmidt, "If the doors are working properly, do you agree that the doors should not contact and injure a pedestrian walking through the doorway?" Mr. Schmidt responded, "I would think that's right."

Ms. Carpenter testified at the trial as well. She testified that she was at The Anderson Building on April 21, 2017, for an appointment with a physical therapist. She testified that she had been having trouble with her balance but that she had no problems walking. The surveillance video shows that when Ms. Carpenter was knocked over by the sliding door, she was standing solidly on both legs and did not appear unbalanced.

The jury was instructed on the law of negligence and returned verdicts finding that both NOL and Ms. Carpenter were negligent. The jury found Ms. Carpenter suffered damages in the amount of $500,000 and assigned 23% fault to NOL and 77% fault to Ms. Carpenter. Because Ms. Carpenter was found to be more at fault than NOL, the trial court granted judgment to NOL and dismissed Ms. Carpenter's complaint. *See McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992) (holding that plaintiff can recover for defendant's negligence only if plaintiff is found to be less negligent than defendant).

Ms. Carpenter's estate argues that no evidence was introduced showing that Ms. Carpenter was negligent. We agree. NOL contends that the jury could have found Ms. Carpenter was negligent based on the surveillance video. However, our review of the video convinces us that Ms. Carpenter did nothing that could have contributed to her being struck by the automatic door. The evidence showed that the industry standard required the automatic door to remain open for thirty seconds when a presence sensor is triggered, and in this case the door was open for less than thirty seconds when it began to close and knocked Ms. Carpenter over. No evidence was introduced that NOL had posted any notices near the doors warning visitors against standing in any particular blind spots near the automatic door to avoid being struck by the door. Moreover, no evidence was introduced that Ms. Carpenter knew or should have known that the automatic door would close if she stood too close to the doorjamb.

In the absence of any material evidence from which the jury could have determined that Ms. Carpenter engaged in conduct contributing to her fall or failed to act in such a way that she could have prevented her fall, we vacate the trial court's decision finding Ms. Carpenter liable for comparative fault and remand for a new trial.[1]

## III. CONCLUSION

The judgment of the trial court is vacated, and this matter is remanded for a new trial. Costs of appeal are assessed against the appellee, NOL, LLC, a/k/a Premier Radiology, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[1] In light of our holding that there is no material evidence to support the jury's verdict finding Ms. Carpenter at fault for negligence, we need not address Ms. Carpenter's alternative argument that the trial court erred in excluding testimony by her expert about whether she did anything to trigger the closing of the automatic door.